**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 11, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CYNTHIA SEELEY,

      Plaintiff-Appellee,

v.

CHRISTOPHER CHASE,

      Defendant-Appellant.

No. 05-2070
(D.C. No. CIV-04-118-JC/LFG)
District of New Mexico

**ORDER**

Gregory Biehler of Albuquerque, New Mexico, for the Defendant-Appellant.

Paul J. Kennedy, (Mary Y.C. Han and Rosemary L. Bauman with him on the briefs), Kennedy & Han, P.C., Albuquerque, New Mexico for the Plaintiff-Appellee.

Before **LUCERO**, **McKAY**, and **McCONNELL**, Circuit Judges.

**LUCERO**, Circuit Judge.

Christopher Chase, a former Albuquerque, New Mexico police officer, appeals a jury verdict awarding $69,880 in compensatory and $873,500 in punitive damages for his alleged sexual assault of Cynthia Seeley in this 42 U.S.C. § 1983 action. Chase insists that we must set aside the jury verdict

because the district court made numerous evidentiary errors that affected the outcome of the trial. Because we conclude that the district court abused its discretion by failing to explain why certain prior sexual assault testimony was less prejudicial than probative, we **REMAND** for the limited purpose of requiring the district court to place the analysis on the record.

## I

On the night of February 19, 2002, Seeley was visiting her girlfriend Dorinda Jim. They began to argue, and Jim called the Albuquerque Police Department for assistance. The police sent two officers to Jim's apartment, including Christopher Chase. Observing that one of the two women needed to leave and "cool off," Chase offered to drive Seeley to a friend's house. When Seeley prepared to leave, Chase placed her into the back seat of his patrol car. According to Seeley, he then took her to a deserted alley and raped her. After making her way back to Jim's apartment, Seeley told Jim that she had been raped by the officer who gave her a ride. Jim called 911.

Several police officers responded and proceeded to interview Seeley about the alleged rape. At first, Seeley confirmed the substance of Jim's call, stating that she had been raped by the officer who had given her a ride. While this discussion was taking place, however, Chase returned to the apartment, and stood behind the female officer speaking to Seeley. When Seeley realized that Chase

had returned to the apartment – and was staring directly at her – she began to recant her story. Seeley stated that she had in fact engaged in consensual sex with a man she met at a nearby bar, and fabricated the story so that Jim would not be angry with her. The police officers left the apartment.

This was the last time Seeley discussed the rape until she was contacted in March 2003 by Detective Monte Curtis. Curtis was conducting an investigation into allegations that an Albuquerque police officer had committed multiple sexual assaults in northeast Albuquerque. During this conversation, Seeley stated that she had been raped by the police officer who transported her on the evening of February 19, 2002.

On June 27, 2003, Chase was named in a thirty-two count criminal indictment in state court ("the indictment"). The indictment charged that Chase had sexually assaulted Seeley and four other women and girls. The indictment also charged that Chase had physically abused two women, and kidnapped or falsely imprisoned five other men and boys.[1]

While these charges were pending against Chase, Seeley filed this action in federal district court seeking compensatory and punitive damages for violations of her civil rights under 42 U.S.C. § 1983, and for assault, battery, false arrest, and

---

[1] The record does not reveal the status of the criminal proceedings against Chase.

false imprisonment under the New Mexico Tort Claims Act. Seeley proffered the testimony of the four other women allegedly sexually assaulted by Chase as well as the entire criminal indictment. Chase opposed the proffer, moving in limine to exclude both the testimony and the indictment. The district court summarily denied the motions. During the three-day jury trial that followed, the district court allowed the four other alleged sexual assault victims to testify and admitted the entire criminal indictment into evidence. At the conclusion of the trial, the jury found for the plaintiff and awarded $69,880 in compensatory damages and $873,500 in punitive damages.

**II**

Chase argues that the jury verdict must be set aside for six reasons. He contends that the district court abused its discretion by: (1) permitting the sexual assault victims named in the indictment to testify; (2) permitting the introduction of the entire indictment into evidence; (3) limiting his cross-examination of Detective Curtis; (4) excluding the testimony of his expert witness; and (5) instructing the jury that it could draw an adverse inference from Chase's assertion of the privilege against self-incrimination. Finally, Chase argues that even if none of the above alleged errors require reversal in their own right, (6) the cumulative effect of the alleged errors requires that we set aside the jury award. Because we conclude that the district court abused its discretion by admitting the

prior sexual assault testimony of other victims without explaining why the evidence was less prejudicial than probative, we order a limited remand for the district court to explain its decision on the record. As such, we need not resolve issues (2) - (6) at this time.

We review a district court's rulings on evidentiary matters and motions in limine for abuse of discretion. United States v. Weller, 238 F.3d 1215, 1220 (10th Cir. 2001). If error is found in the admission of evidence, a jury verdict will be set aside only if the error prejudicially affects a substantial right of a party. Sanjuan v. IBP, Inc., 160 F.3d 1291, 1296 (10th Cir. 1998). Evidence admitted in error can only be prejudicial "if we can reasonably conclude that without the evidence, there would have been a contrary result." Smith v. Atlantic Richfield Co., 814 F.2d 1481, 1487 (10th Cir.1987). Moreover, we are always mindful that "[t]he jury . . . has the exclusive function of appraising credibility [and] determining the weight to be given to the testimony . . . ." United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1226 (10th Cir. 2000) (internal citation omitted).

The testimony of the other four women allegedly assaulted by Chase is chilling. Mitsey Ramone, an eighteen-year-old prostitute at the time of her alleged assault, testified that she and a patron were pulled over by an Albuquerque police officer sometime in September 2001. She later identified this

officer as Christopher Chase. After instructing the patron to leave, Chase told Ramone that he needed to search her for drugs and weapons. During the search, Ramone testified that Chase rubbed her breasts and inserted a finger inside her vagina. After stating that he was taking Ramone to jail, he placed her, uncuffed, in the back seat of his patrol car and drove to a dark area and raped her. Ramone also testified that six months later she was again approached by Chase, this time while walking on the street with her boyfriend. The boyfriend was ordered to continue walking, and Chase took Ramone to a nearby park, where he once again raped her.

The jury also heard testimony from Veronica Edwell. She testified that on one evening in January 2003, Chase trailed her car into the parking lot of a local tavern where she intended to pick up her husband after he had spent a night out with friends. According to Edwell, Chase got out of his patrol car, approached her, and asked if she had been drinking. Edwell said that she had not, and Chase permitted her to continue driving. Later that evening, however, Chase pulled Edwell over again. She was instructed to get out of her vehicle and face the car. While he was searching Edwell, Chase rubbed her breasts, and asked: "Oh, are you pierced? Do you have any piercings?" He then asked: "Well, what are you going to do to get out of this DWI?" Edwell again insisted that she had not been drinking, and asked Chase to give her some sort of test. He handcuffed Edwell,

placed her in the backseat of his patrol car, and continued to ask what she was willing to do to get out of "this DWI." Edwell began to cry, and pleaded to be released. Chase responded by opening Edwell's blouse, pulling down her brassiere, and fondling her breasts. He then released Edwell, but warned her that "I'm going to be watching you."

M.G. and K.H., both sixteen-year-old high school students at the time of their alleged assault, also took the witness stand. M.G. and K.H. testified that they were driving around an Albuquerque suburb with four friends when they were pulled over by an Albuquerque police officer. The officer approached the vehicle and explained that he needed to "question" some of them. The officer took M.G. to his patrol car and sat her on the back seat beside him. Explaining that he needed to "search" her, Chase inserted two fingers inside M.G.'s vagina. Despite her protests, the officer refused to stop, again stating that he was searching for weapons and contraband. M.G. was eventually permitted to return to K.H.'s vehicle. She was not able to positively identify Chase, but selected a photo of someone resembling Chase out of a photographic lineup.

K.H. testified that after the officer returned M.G. to the car fifteen minutes later, she was next taken to the back seat of the patrol car. There, the officer demanded that K.H. unbutton her pants so that he could check for weapons and drugs. Over K.H.'s protests, he pulled her pants and underwear down to her

knees. He then shined a flashlight on her genitals for several seconds. K.H. returned to her car, followed by the officer. At trial, K.H. was unable to identify this officer as Christopher Chase; she explained that she never saw him properly.

The district court admitted the above testimony on the basis of Fed. R. Evid. 415 which provides:

> In a civil case in which a claim for damages or other relief is predicated on a party's alleged commission of conduct constituting an offense of sexual assault or child molestation, evidence of that party's commission of another offense or offenses of sexual assault or child molestation is admissible and may be considered as provided in Rule 413 and Rule 414 of these rules.

This court has not addressed at length the requirements for admitting prior sexual assault testimony under Rule 415. We have, however, discussed these requirements in the context of Rule 413, which covers admission of prior sexual assaults in the context of a criminal trial.[2] Evidence of prior sexual assaults may be admitted under Rule 413 if (1) the defendant is on trial for a sexual assault offense, (2) the evidence proffered is of another sexual assault, and (3) the court finds the evidence is relevant. United States v. Guardia, 135 F.3d 1326, 1332 (10th Cir. 1998). To be relevant, "the evidence must show both that the

---

[2] Fed R. Evid. 413 provides in relevant part:

In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant.

defendant has particular propensity, and that the propensity it demonstrates has a bearing on the charged crime." Id. Finally, the trial court "must make a reasoned, <u>recorded</u> finding that the prejudicial value of the evidence does not substantially outweigh its probative value" under Rule 403.[3] Id at 1332 (emphasis added). The court must give "careful attention to both the significant probative value and the strong prejudicial qualities inherent in all evidence submitted under 413." Id. at 1330.

> In applying the Rule 403 balancing test, the district court must consider:
>
> 1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence. When analyzing the probative dangers, a court considers: 1) how likely is it such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct.

United States v. Enjady, 134 F.3d 1427, 1433 (10th Cir. 1998). The district court must also make a "preliminary finding that a jury could reasonably find by a preponderance of the evidence that the 'other act' occurred." Id.

---

[3] Fed. R. Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Although we have not specifically stated that a district court must follow these procedures when applying Rule 415, we have stated that courts must "make a reasoned, recorded statement of its 403 decision when it admits evidence under Rules 413-415." United States v. Castillo, 140 F.3d 874, 884 (10th Cir. 1998). Moreover, we have noted that Rule 413 and Rule 415 are "companion" rules. Guardia, 135 F.3d at 1328. As such, in making its "reasoned, recorded statement," a district court must follow the same procedure for determining whether evidence is admissible under Rule 415 as it would when admitting evidence under Rule 413.

The parties do not dispute that the trial court failed to conduct a Rule 403 analysis of the proffered prior sexual assault evidence. Under United States v. Castillo, this requires that we order a limited remand. Castillo was a criminal case in which the government sought to introduce evidence of uncharged prior sexual assaults under Rule 413. The defendant opposed the proffer, arguing that the evidence should be excluded under Rule 403. The district court disagreed, stating that it believed Rule 403 did not apply to Rule 413, and even if it did, it found the Rule 413 evidence "relevant and the probative value is not substantially outweighed by any prejudice." Ruling that "[t]his statement falls short of our minimum requirements," we held:

> [T]he district court's summary disposition of this issue renders it
> impossible for us to review the propriety of its decision . . . . Without any

reasoned elaboration by the district court we have no way of understanding the basis of its decision . . . . As an appellate court, we are in no position to speculate about the possible considerations which might have informed the district court's judgment. Instead, we require an on the record decision by the court explaining its reasoning in detail.

Castillo, 140 F.3d at 884 (internal citations and quotation marks omitted). The case was remanded to the district court for the limited purpose of placing its Rule 403 analysis of the Rule 413 evidence on the record. Id. Such a limited remand is also called for here. There is no way for this court to review the district court's determination that the evidence was more probative than prejudicial without an explanation of its ruling on the record.

Chase argues that Edwell and K.H.'s testimony was improperly admitted for another reason as well. Only evidence that the defendant committed other acts of "sexual assault" is admissible under Rule 415. "Sexual assault" is defined in Rule 413(d) as follows:

> (1) any conduct proscribed by chapter 109A of title 18, United States Code;
> (2) contact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person;
> (3) contact, without consent, between the genitals or anus of the defendant and any part of another person's body;
> (4) deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on another person; or
> (5) an attempt or conspiracy to engage in conduct described in paragraphs (1) – (4).

Chase argues that Edwell and K.H.'s testimony does not constitute "sexual assault" because neither act involved contact with genitals. Conceding that

Edwell and K.H. did not testify to being touched on the genitals, Seeley argues that Chase's behavior should be construed as an attempt to do so. Chase offers two responses.

First, Chase argues that because the district court did not explicitly rule that it was admitting the evidence under the "attempt" prong of Rule 413(d), it is "pure supposition" for this court to assume this prong was the basis for its ruling. Given that only actual genital contact or an attempted genital contact is admissible under Rule 415, and there is no allegation by anyone that the Edwell and K.H. incidents involved genital touching, it is more than "pure supposition" that the district court admitted the evidence under the "attempt" prong – it is logically necessary. It makes no sense to presume the basis for the district court's ruling as to Edwell and K.H. fell within the former, inapplicable category when the latter was obviously applicable.

Second, Chase argues that Edwell and K.H.'s testimony does not allege attempted genital contact because there is no allegation that Chase took a "substantial step" toward commission of the act. See U.S. v. Ramirez, 348 F.3d 1175, 1190 (10th Cir. 2003) (the crime of attempt requires proof that the defendant committed a "substantial step toward commission of the substantive offense") (internal citations and quotation marks omitted). Chase argues there

was no substantial step, apparently because neither Edwell nor K.H. testified that they were forced to parry an effort by Chase to touch their genitals. We disagree.

"A substantial step is an appreciable fragment of a crime and an action of such substantiality that, unless frustrated, the crime would have occurred. The step must be strongly corroborative of the firmness of the defendant's criminal intent, and must unequivocally mark the defendant's acts as criminal. It should evidence commitment to the criminal venture. . . . The dividing line between preparation and attempt is not clear and depends to a high degree on the surrounding factual circumstances." United States v. DeSantiago-Flores, 107 F.3d 1472, 1478-79 (10th Cir. 1997) (quotation marks, alterations, and citations omitted), overruled on other grounds by United States v. Holland, 116 F.3d 1353 (10th Cir. 1997).

Chase stopped Edwell two times, handcuffed her, placed her in his police car, and asked that she have sex with him to get out of her "DWI." He then opened Edwell's blouse, and rubbed her breasts. The district court did not abuse its discretion by determining that this constituted a "substantial step" towards sexually assaulting Edwell and hence admitted the testimony under Rule 415. Our conclusion is no different for the testimony of sixteen year old K.H. When M.G. was finally returned to the car after being sexually assaulted by Chase, K.H. that she was next taken to the patrol car. There, the officer pulled her pants and

underwear down to her knees, he shined a flashlight on her exposed genitals.  As with Edwell, this testimony is more than sufficient to establish that the district court did not abuse its discretion in determining that Chase took a "substantial step" toward sexually assaulting K.H.

### III

Because we cannot review a district court's decision to admit Rule 415 evidence unless it makes a reasoned, recorded statement of its 403 decision, the case is **REMANDED** to the district court for an articulated analysis of its ruling under Rule 403.  This court will retain jurisdiction of the appeal pending the district court's further rulings, which shall be certified to this court as a supplemental record.  In the interim, the case is abated.  Counsel shall file a status report every sixty days with the clerk of this court.

Entered for the Court
ELISABETH A. SHUMAKER, Clerk


By:
Deputy Clerk