**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 18, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LAURA SAURINI,

Plaintiff - Appellant,

v.

ADAMS COUNTY SCHOOL
DISTRICT NO. 12, also known as
Adams Twelve Five Star Schools;
RICK KELLOGG; JACOB MURPHY;
LINDA CURRY; MARK HINSON,

Defendants - Appellees.

No. 04-1477

D. Colorado

(D.C. No. 02-Z-953 (BNB))

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **SEYMOUR**, and **HARTZ**, Circuit Judges.

Laura Saurini appeals from an adverse judgment following a jury trial on

her claim that her former employer, Adams County School District No. 12 (the

School District), and Mark Hinson, Assistant Superintendent of Human

Resources, retaliated against her for exercising her First Amendment right to free

speech. She argues that the district court committed reversible error in

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

instructing the jury, barring her from presenting a claim at trial, and making evidentiary rulings. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.   BACKGROUND

Laura Saurini was hired in 1998 as a nontenured school counselor at Huron Middle School (Huron), part of the School District. While employed at Huron, she had numerous clashes with other school personnel, some of which related to the reporting of what she considered child abuse. In addition, she claims that she objected to school policy restricting her authority to report such abuse.

On April 24, 2000, near the end of Ms. Saurini's second year at the school, Huron Principal Linda Curry and Assistant Principal Jacob Murphy recommended to Mr. Hinson that Ms. Saurini's contract not be renewed for the next school year. Principal Curry stated that the counseling department at Huron was dysfunctional and needed to be changed, and Ms. Saurini was simply not qualified for the job.

The next day Ms. Saurini received a certified letter from Mr. Hinson stating that she was being recommended for nonrenewal. The letter explained that the School District believed it could find "a candidate for employment who possesses stronger skills and/or qualifications." Aplt. App. at 2408.

Ms. Saurini attended a School Board meeting on May 16, 2000, to challenge Mr. Hinson's recommendation. Given the opportunity to address the Board, she began reading a prepared letter about "serious child safety issues at Huron," but when she began to discuss the relation of these issues to her being

nonrenewed, the Board instructed her not to discuss her employment issues in public session. Aplt. Br. at 28. Soon thereafter, at the Board's executive session, she was allowed to read her letter in full. She also provided each Board member with a copy of the letter along with letters of support from parents and teachers. After she left, the Board voted to adopt in full Mr. Hinson's list of employees to be nonrenewed, thereby terminating Ms. Saurini's employment.

Ms. Saurini filed suit on May 15, 2002, in the United States District Court for the District of Colorado against the School District, Mr. Hinson, and several others, alleging claims for retaliation for exercising her First Amendment rights, violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment, wrongful discharge in violation of public policy, violation of Colorado's Child Protection Act of 1987, breach of contract, and intentional interference with her contract with the School District. In pretrial rulings the district court disposed of all the claims except her First Amendment retaliation claims under 42 U.S.C. § 1983 against the School District and Mr. Hinson, which were tried from October 4 to 14, 2004. The jury returned a verdict for the defendants. Ms. Saurini timely appealed. The only issues on appeal relate to the tried claims. The facts relevant to each issue will be summarized in the discussion of the issue.

## II.    DISCUSSION

### A.    Elements of Retaliation Claim

Ms. Saurini contends that the School District retaliated against her because of her reports of child abuse and her complaints about a team-approval policy that allegedly restricted her authority to report abuse. Whether the defendants violated Ms. Saurini's rights under the First Amendment is determined under the four-prong test articulated by the Supreme Court in *Pickering v. Board of Education of Township High School District*, 391 U.S. 563 (1968). As we stated in *Orr v. City of Albuquerque*, 417 F.3d 1144, 1154 (10th Cir. 2005):

> The first three steps of the *Pickering* test are (1) whether the speech touches on a matter of public concern, (2) whether the employee's interest in commenting on matters of public concern outweighs the interest of the state in promoting the efficiency of the public service it performs through its employees, and (3) whether the protected speech was a substantial or motivating factor behind the adverse employment decision. If these three factors are met, (4) the burden shifts to the employer to establish that it would have reached the same decision in the absence of the protected conduct.

(internal quotation marks omitted). The first two prongs are to be decided by the court as a matter of law; the last two prongs are questions of fact for the jury to decide. *See McFall v. Bednar*, 407 F.3d 1081, 1088 (10th Cir. 2005). (The recent Supreme Court decision in *Garcetti v. Ceballos*, 129 S. Ct. 1951 (2006), added a gloss on *Pickering* for employees speaking in their official capacities. But we need not consider what, if any, effect that decision would have, because it could only help the defendants.)

### B. Instructions

#### 1. Standard of Review

Ms. Saurini raises four challenges to the jury instructions. None of the challenges was properly preserved below. "A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51(c)(1). Specifically with respect to a claim of improper failure to give an instruction, "a party must both proffer an instruction and make a timely objection to the refusal to give a requested instruction." *Abuan v. Level 3 Commc'ns, Inc.*, 353 F.3d 1158, 1172 (10th Cir. 2003). "A party does not satisfy the requirements for Rule 51 by merely submitting to the court a proposed instruction that differs from the instruction ultimately given to the jury." *Id*. (internal quotation marks omitted).

In this case Ms. Saurini did submit two proposed instructions that she claims should have been accepted by the district court, but she did not object on the record to the court's refusal to give the instructions. Nor did she raise adequate objections on the record below with respect to her other two challenges to the instructions. She contends that her objections are not on the record because "the district court dismissed the court reporter during the three-hour jury instruction conference[]." Aplt. Br. at 51. But the district court gave counsel the opportunity to state their objections for the record after the instruction

conference.  Ms. Saurini's counsel simply failed to take advantage of the opportunity.

Because Ms. Saurini did not preserve below her claims of error, on appeal she must establish plain error:  that is, "(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights." *Abuan*, 353 F.3d at 1173 (internal quotation marks omitted).  Even then, "[w]e may only reverse in an exceptional circumstance, where the error was patently erroneous and prejudicial and where fundamental injustice would otherwise occur." *Id.*; *see Polys v. Trans-Colorado Airlines, Inc.*, 941 F.2d 1404, 1408 (10th Cir. 1991) ("[T]he plain error exception [is] limited to errors which seriously affect the fairness, integrity or public reputation of judicial proceedings. The 'miscarriage of justice' must be patently plainly erroneous and prejudicial." (internal quotation marks, ellipsis, citations, and footnote omitted)).  We now address in turn each challenge to the instructions.

### 2.    Delegation by Board

Ms. Saurini's first challenge to the jury instructions is that the district court should have given the jury her proposed instruction (which she proffered twice) that the School District is liable under § 1983 "if the Board delegated its decision-making authority to a retaliatory administrator." Aplt. Br. at 50.  Her proposed instruction read:

> A claim of retaliation in violation of the First Amendment may be shown if (a) the School Board retains its decision-making authority but exercises it with deliberate indifference to Plaintiff's constitutional rights, or (b) *the School Board delegates its decision-making authority to an Administrator who retaliates against Plaintiff in violation of her constitutional rights.*
>
> Pursuant to Colorado law, delegation of the School Board's decision-making authority regarding nonrenewal of probationary employees is not allowed. However, the School Board must be in compliance with this law.
>
> The School Board is not in compliance of Colorado law if through a custom or usage it creates or gives decision-making authority regarding nonrenewal of school employees to an Administrator and then rubber-stamps the Administrator's decisions concerning the nonrenewal list.

Aplt. App. at 2598 (emphasis added).

Ms. Saurini's challenge concerns alternative "(b)" in the first paragraph. She alleges that the Board had a custom of delegating to Mr. Hinson the responsibility of choosing which personnel should be nonrenewed and then voting to approve his choices without serious debate. She argues that this custom effectively delegated the authority to renew or not renew to Mr. Hinson and "resulted in 'assembly-line rubber-stamping' of Hinson's recommendations, thereby creating a direct causal link between the School Board and the alleged constitutional deprivation." Aplt. Br. at 53. The jury, she concludes, "should have been instructed in this causal link and had the opportunity to determine the facts of this issue." Aplt. Br. at 53-54.

Ms. Saurini's argument is contrary to circuit precedent. In *Jantz v. Muci*, 976 F.2d 623 (10th Cir. 1992), we held that the school board did not delegate authority to a subordinate, and therefore had no liability under § 1983 for the subordinate's alleged discrimination, when state law invested the school board with "final authority" to review hiring decisions made by a subordinate officer, unless the subordinate's decision was based on a policy statement expressly approved by the board. *Id.* at 631 (internal quotation marks omitted). The plaintiff in *Jantz* made a "rubber-stamping" argument similar to Ms. Saurini's; although there was no express policy that guided the subordinate's hiring decisions, the plaintiff argued that the board delegated its hiring authority to the subordinate by "custom or usage" because its "ultimate hiring decisions rarely conflict[ed] with the decision of the [subordinate]." *Id.* (internal quotation marks and brackets omitted). We disagreed, holding that "[s]imply going along with discretionary decisions made by one's subordinates" is not a delegation of policymaking authority, as long as the school board retained the authority to review hiring decisions. *Id.* (internal quotation marks omitted).

The defendants in this case argue that *Jantz* controls because Colorado law, like the Kansas law applied in *Jantz*, prevents boards of education from delegating hiring and firing decisions. *See Big Sandy Sch. Dist. No. 100-J v. Carroll*, 433 P.2d 325, 328 (Colo. 1967), *overruled on other grounds by Normandy Estates Metro. Recreation Dist. v. Normandy Estates, Ltd.*, 553 P.2d

386 (Colo. 1976) (en banc). Ms. Saurini does not respond to this argument (indeed, the second paragraph of her proposed instruction states that such a delegation of authority is not allowed under Colorado law), and we agree that *Jantz* controls. There was no error in failing to instruct the jury that the School District could be liable on the theory that it delegated its authority to Mr. Hinson. Moreover, because the jury rendered a verdict in favor of Mr. Hinson, the School District could not be liable under a delegation theory in any event.

### 3.    Deliberate Indifference

For her second challenge to the instructions, Ms. Saurini argues that the district court should have given the following instruction to the jury regarding "deliberate indifference":

> "Deliberate indifference" to the rights of others is the conscious or reckless disregard of the consequences of one's acts or omissions.
>
> To demonstrate that the School District acted with deliberate indifference to Plaintiff's First Amendment rights, she must show that (a) the School District was aware of Plaintiff's belief that her non-renewal was in retaliation for her protected speech, and (b) the School District consciously or deliberately chose to disregard the risk of harm to Plaintiff's constitutional rights. *The School District's conscious or deliberate choice to disregard the risk of harm to Plaintiff's constitutional rights may be shown by the School District's failure to properly investigate Plaintiff's claim of retaliation for exercising her First Amendment right to free speech.*
>
> The law dictates that School Boards are chargeable with the knowledge that employees may not be dismissed in retaliation for lawful exercise of First Amendment rights.

-9-

Aplt. App. at 2600 (emphasis added). The instruction that the district court gave was identical to what was requested except for the omission of the last sentence of the second paragraph. That omission was proper. The requirement of deliberate indifference is not necessarily satisfied by a "failure to properly investigate," which encompasses negligence. *See Despain v. Uphoff*, 264 F.3d 965, 972 (10th Cir. 2001) (deliberate indifference "entails something more than mere negligence" (internal quotation marks omitted)); *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) ("Liability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence."). The district court did not plainly err in rejecting Ms. Saurini's proffered instruction.

### 4. Good Faith

Third, Ms. Saurini challenges the district court's Instruction No. 15. The instruction stated:

> In this case, Plaintiff contends her contract was not renewed because of child abuse reports she made that were protected by the First Amendment. The child abuse reports made by Ms. Saurini do constitute statements protected by the First Amendment to the United States Constitution if they were made in good faith and were based on reasonable suspicion.

Aplt. App. at 2579. Ms. Saurini argues that abuse reporting is, "as a matter of law, speech protected by the First Amendment" and that the jury could have "erroneously determined that the speech was not protected by the First

Amendment." Aplt. Br. at 41. As we understand her briefs, she is not challenging the relevance of good faith and reasonable suspicion to the First Amendment inquiry, but only that those issues are for the judge to decide.

We recognize that Ms. Saurini objected on the record to this instruction. But we still must apply plain-error review because she did not clearly raise on the record below the issue she now raises on appeal. Her only objection on the record to this instruction, which had been tendered by the defendants as No. 33.DM, was as follows:

| | |
|---|---|
| [MS. SAURINI'S COUNSEL]: | We would like to object to 33.DM and specifically the last sentence to that and also to 3.D for the record. |
| THE COURT: | Can I just inquire, I don't have it in front of me. Was 33.D what the refused—did you give me a refused on that or is that just an objection? |
| [MS. SAURINI'S COUNSEL]: | We are objecting to that [instruction] in the sense that it's in good faith and based on reasonable suspicion part of that. |
| THE COURT: | Okay. |
| [MS. SAURINI'S COUNSEL]: | In the sense that it involves the Pickering balancing test. |
| THE COURT: | Anything else? |
| [MS. SAURINI'S COUNSEL]: | That's it. |

Aplt. App. at 2259. This objection is incoherent and hence inadequate. Perhaps after being present at the instruction conference the district court and both parties understood precisely what Ms. Saurini was objecting to, but we must decide this case on the record, and we cannot conclude that this obscure objection would alert anyone to the alleged problem in the instruction to be given. Fed. R. Civ. P. 51(c)(1) requires an objecting party to "stat[e] distinctly the matter objected to and the grounds of the objection"; the objection failed this standard.

We will assume that Ms. Saurini is correct that the issues of good faith and reasonable suspicion should have been decided by the judge, although the defendants make an interesting argument that these are "subsidiary fact issues" that should be decided by a jury. Aplee. Br. at 33. But under plain-error review she must also establish that the error was "prejudicial" and that reversal is required to avoid a "fundamental injustice." *Abuan*, 353 F.3d at 1173. Thus, Ms. Saurini must show that the district court would likely have resolved the issues of good faith and reasonable suspicion differently than the jury. Nothing in the record suggests that would have happened. Because the claim of prejudice is speculative, we reject it.

### 5.    Team-Approval

Ms. Saurini's final challenge to the instructions is that the district court failed to instruct the jury that her objections to the school's alleged "team approval" policy were "categorically protected" speech. Aplt. Br. at 41. As with

her other challenges, she did not preserve the issue below, so we review for plain error.

We deny relief on this ground because Ms. Saurini has failed to show that the absence of the desired instructions created a "fundamental injustice." *Abuan*, 353 F.3d at 1173. Whether her opposition to the reporting policy was protected speech was simply not an issue at trial. Although the district court's instructions make several references to protected speech, they make no reference to the *Pickering* factors or even ask the jurors to determine whether her "speech touch[ed] on a matter of public concern," *Orr*, 417 F.3d at 1154 (internal quotation marks omitted), or to weigh Ms. Saurini's free-speech interest against the School District's needs as an employer. Rather, the instructions implicitly suggest that all her speech at issue was protected speech, with the exception we have already addressed of child-abuse reports made in bad faith or without reasonable suspicion. For example, Instruction No. 2 described the defendants' defenses as follows:

> Defendants deny that Plaintiff's supervisor, Linda Curry, retaliated against Plaintiff by recommending her nonrenewal based on her filing of child abuse reports. Defendant Adams County School District No. 12 also denies that the Board of Education nonrenewed Plaintiff's employment based on any retaliatory motive related to Plaintiff's filing of child abuse reports or acted with deliberate indifference to Plaintiff's First Amendment rights when it nonrenewed Plaintiff's employment.

> Defendant Mark Hinson denies that he retaliated against Plaintiff for her filing of child abuse reports or knew of or

acquiesced in any retaliation against Plaintiff based on her filing of child abuse reports. Defendants state that Plaintiff was nonrenewed because Ms. Curry wanted a better counselor and because the school district had to place a non-probationary counselor. Defendants affirmatively state that Plaintiff would have been nonrenewed regardless of any child abuse reports made by her or statements made by her about child abuse reporting procedures.

Aplt. App. at 2566. There is no suggestion that her complaints about reporting procedures were not protected speech. Moreover, the only statements in the defendants' closing argument implying that speech was not protected were references to a child-abuse report that the defendants claimed to have been deliberately false and to Ms. Saurini's actions in reporting that one student had kissed another without consent.

In short, there is no reason to believe that the jury rendered a verdict against Ms. Saurini on the ground that her objections to reporting procedures were not protected by the First Amendment.

### C.    Posttermination Retaliation

Ms. Saurini argues that the district court erred by excluding her testimony regarding "post non-renewal retaliation" by the defendants. The defendants objected to such testimony because it was irrelevant to what they asserted to be the only claim at issue in the case—whether her contract was nonrenewed in retaliation for her protected speech. The district court sustained the defendants' objection, stating that it didn't "want surprises," Aplt. App. at 1434, and ruling

-14-

that the posttermination claim "really hasn't been raised . . . sufficiently," *id.* at 1470.

We review for an abuse of discretion a district court's decision whether to permit an amendment to the pleadings under Fed. R. Civ. P. 15(b). *See Green Country Food Mkt., Inc. v. Bottling Group, LLC*, 371 F.3d 1275, 1280 (10th Cir. 2004). Plaintiffs are not permitted "to wait until the last minute to ascertain and refine the theories on which they intend to build their case." *Id.* at 1279. "This practice, if tolerated, would . . . unfairly surprise defendants, requiring the court to grant further time for discovery or continuances." *Id.* (internal quotation marks omitted).

At trial Ms. Saurini argued that the defendants were on notice of a posttermination retaliation claim because of (1) the claims in the second amended complaint and the pretrial order; (2) an answer in Ms. Saurini's deposition, and (3) an affidavit by Ms. Saurini that was attached to her response to the defendants' motion for summary judgment. In our view, the notice was minimal, if not nonexistent.

Ms. Saurini's second amended complaint contains no mention of retaliation that occurred after the School District nonrenewed her contract. Paragraph 25 of the general allegations of the second amended complaint states only that the School District "did not renew Plaintiff's employment contract in retaliation for her disclosure of harassment, discrimination, and illegal practices regarding

-15-

apparent child abuse occurring at Huron Middle School." Aplt. App. at 50. In her First Amendment claim, Paragraph 49 states, "Plaintiff's exercise of her protected rights was a substantial factor in Hinson and [the School District's] decision to reprimand Plaintiff and terminate her employment." *Id*. at 53.

The pretrial order speaks only generally of retaliation, reciting no specifics. It states:

> All the Defendants retaliated against Ms. Saurini for exercising her freedom of speech rights regarding the reporting of abuse of a child(s), in violation of 42 U.S.C. § 1983 and the First Amendment. Further, all the Defendants violated Ms. Saurini's procedural and substantive rights guaranteed under the Due Process Clause of the Fourteenth Amendment.

*Id*. at 212. It listed 17 witnesses for Ms. Saruini; the summaries of their expected testimony make no mention of posttermination retaliation.

Somewhat more helpful to Ms. Saurini is one of her replies during her deposition:

Q:   Now, after you were nonrenewed, you applied for some other positions in the school district, correct?

A:   Correct.

Q:   And you're alleging that you were denied those positions out of retaliation?

A:   Yes, I believe so.

*Id*. at 540. When defense counsel pursued this answer, however, she provided no evidence of First Amendment retaliation, certainly none attributable to the School

District or Mr. Hinson. She mentioned that she was not offered a job at Westlake Middle School because of negative comments made about her personality, but she could not identify who made such comments. She also claimed that Lynn Albi, a School District employee, had made false statements about her in a letter, but she could only speculate that Mr. Albi would have done so because she had "talk[ed] to the union" and "go[ne] to the Board of Education." *Id*. at 541. Her deposition testimony would give the defendants' attorney no reason to think a posttermination retaliation claim would be raised against them.

As for Ms. Saurini's affidavit, it stated merely, "Linda Curry's poor references have prevented me from getting several jobs available in Adams County School District No. 12 and in a middle school in Brighton." *Id*. at 209. Like her deposition responses, this statement does not allege that the "poor references" were meant as retaliation for protected speech, nor does it implicate either of the defendants who went to trial.

In addition to Ms. Saurini's failure to show that she provided notice of a posttermination claim, she also failed to show the district court that she had any relevant evidence to produce at trial. When she sought to be allowed to testify about posttermination retaliation, the following exchange occurred:

THE COURT:      What are you going to show?
              Tell me.

[MS. SAURINI'S COUNSEL]:  Judge, this is a First
              Amendment retaliation case.

| | |
|---|---|
| THE COURT: | I know what it is. Tell me what you are going to show. |
| [MS. SAURINI'S COUNSEL]: | What I am going to show is that she applied for jobs. She applied—she has been applying for three or four years and still can't get a position back in her chosen career. *Something is going on. We are not really sure what.* |

*Id.* at 1432-33 (emphasis added). The district court did not abuse its discretion in ruling that a claim of posttermination retaliation had not been raised before trial and that the issue could not be addressed at trial.

**D.    Evidentiary Issues**

Ms. Saurini challenges three evidentiary rulings of the district court. Our review of such rulings is for an abuse of discretion. *See Seeley v. Chase*, 443 F.3d 1290, 1293 (10th Cir. 2006).

**1.    Audiotape**

Ms. Saurini argues that the district court erred by allowing the defendants to play an audiotape of the May 16, 2000, School Board meeting after denying her request to admit the tape. She had sought to introduce the 15-minute tape during her direct testimony as evidence of her dismissive treatment by the Board. The defendants objected to the admission of the tape as irrelevant and repetitive.

-18-

After listening to the tape, the district court sustained the objection, ruling that it was "repetitious and cumulative." Aplt. App. at 1267.

Ms. Saurini then testified that the School Board had treated her rudely, saying, "I wish you could hear the sarcasm in their voices," *id.* at 1418, and "I cannot express probably enough how rude they were," *id.* at 1419. She also stated that the Board had rudely cut off both her and her supporters while speaking. After this testimony, the defendants changed their position and offered to play the tape to refute her testimony that the Board had treated her rudely during the May 16 meeting. Ms. Saurini objected, saying that if the tape "was cumulative in our case, it's certainly . . . cumulative in [the] defense case." *Id.* at 1563. The district court overruled the objection, saying that "in all fairness it needs to be heard by the jury." *Id.* at 1564.

The district court's ruling was sensible. We see no abuse of discretion.

### 2. Legal Memoranda

Ms. Saurini argues that she should have been allowed to introduce copies of legal memoranda and newsletters prepared by the School District relating to a school counselor's duty to report child abuse. The documents, she says, were relevant "to show the basis for her reasonable suspicion and decision to report child abuse." Aplt. Br. at 60. Her theory is that the documents are relevant because her fellow counselors relied on them when they advised her to report suspected abuse.

-19-

The defendants objected to their admission at trial, arguing that the documents were irrelevant because (1) they were "just a collection of various documents that have been distributed by the school district over the course of many years," Aplt. App. at 1076, (2) they predated Ms. Saurini's employment and there was no showing that she had ever seen them, and (3) there was "no fact at issue in the case regarding what [a fellow counselor] knew or where he got the information from. This doesn't tend to show one way or the other whether Laura Saurini was retaliated against for reporting child abuse," *id*. at 1081. The district court excluded the evidence. We see no error in this ruling. Any relevance was minimal.

### 3. Leading Questions

Ms. Saurini argues that on 12 separate occasions the district court erred by permitting defense counsel to ask witnesses leading questions. Fed. R. Evid. 611 discourages the use of leading questions on direct examination, but it does not forbid them. Permitting them is within the trial court's discretion. *See United States v. Olivo*, 69 F.3d 1057, 1065 (10th Cir. 1995) ("Rule 611(c) governs leading questions; it vests broad discretion in the trial judge."); *see also* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 611.06[2][b] (2d ed. 2006) ("Leading questions on direct examination will more quickly get the witness over preliminary matters. Often, leading questions are asked on preliminary and collateral matters to expedite the trial."). Having reviewed each

instance in the record identified by Ms. Saurini, we are satisfied that the district court did not abuse its discretion in allowing the questions.

### 4. Cumulative Error

Finally, Ms. Saurini urges that we consider the cumulative effect of the district court's erroneous evidentiary rulings. "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *McCue v. Kansas Dep't of Human Res.*, 165 F.3d 784, 791 (10th Cir. 1999). Having found no error in any of those rulings, we must conclude that there was no cumulative error.

## III. CONCLUSION

We AFFIRM the judgment of the district court.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge

-21-