*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0422a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

   *v.*

   No. 05-1643

JOSEPH LEE SEYMOUR,

      *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 04-00027—R. Allan Edgar, District Judge.

Argued: September 21, 2006

Decided and Filed: November 15, 2006

Before: GUY, GILMAN, and ROGERS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Paul L. Nelson, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, for Appellant. Andrew Byerly Birge, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, for Appellant. Andrew Byerly Birge, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

---

## AMENDED OPINION

---

      RONALD LEE GILMAN, Circuit Judge. Joseph Lee Seymour was charged in a two-count indictment with aggravated sexual abuse of a minor and with aggravated sexual abuse of an adult by force. A jury convicted Seymour on both counts. The district court sentenced Seymour to 262 months of imprisonment and five years of supervised release. Seymour now challenges (1) the admission of evidence regarding uncharged prior sexual assaults against two other adult victims to prove the child-molestation charge, (2) the exclusion of testimony relating to whether the adult victim in the present case consented to sexual behavior with Seymour, (3) the sufficiency of the evidence with respect to the child-molestation charge, and (4) the length of his sentence. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

1

## I.  BACKGROUND

Seymour, a Native American, has lived on or near the Hannahville Indian Community Reservation in Michigan for most of his life.  At the age of 12, he witnessed a truck strike and kill his father.  In his early teens, Seymour began abusing alcohol and drugs.

The alleged victims in the present case, D.H. and C.P., are mother and daughter.  D.H. is the wife of one of Seymour's brothers.  In 2004, C.P., who was then ten years old, reported that Seymour, her uncle, had "fingered" her three years earlier.   During the course of the subsequent investigation, D.H. reported that Seymour had sexually assaulted her as well in 2001.  Seymour was charged in August of 2004 with aggravated sexual abuse of a minor, in violation of 18 U.S.C. § 2241(c) (Count I), and with aggravated sexual abuse of an adult by force, in violation of 18 U.S.C. § 2241(a)(1) (Count II).  The government alleged that he had "used his finger to penetrate the genital opening of C.P., a female Indian, who had not attained the age of twelve years, with the intent to gratify his sexual desire . . . in or about August-October 2001."  It further alleged that Seymour had used force to make "intentional contact between his penis and the vulva of D.H., a female Indian . . . in or about June-August 2001." Seymour pled not guilty to both counts.

Three months prior to trial, the government informed Seymour that it planned to introduce evidence that he had engaged in unlawful sex acts with three other women, D.T., L.M., and C.S. The government argued that this evidence was admissible under Rule 413 of the Federal Rules of Evidence, which permits the introduction of "the defendant's commission of another offense or offenses of sexual assault" if the defendant is charged with an offense of sexual assault.  Seymour objected to the introduction of this evidence, which consisted of two allegations of forceful sexual penetration and one allegation of unwanted sexual contact.  He argued that the introduction of this evidence would "lead to prejudice and confusion of a magnitude sufficient to substantially outweigh its probative value" under Rule 403 of the Federal Rules of Evidence.

The district court held that the testimony regarding the alleged prior sexual assaults was admissible to prove both counts against Seymour.  It further denied Seymour's request during the trial for the court to provide "a proper, appropriate instruction [in order to] avoid some of the prejudice . . . and certainly the confusion that the Jury is going to find" from the admission of such testimony.

Seymour's trial began in December of 2004.  The government first offered the testimony of C.P., who was then 11 years old.  C.P. testified that, late on the night of the alleged sexual assault, Seymour knocked on her mother's bedroom window.  He was intoxicated.  She, her brother, her sister, and their mother, D.H., were all sleeping in D.H.'s large bed.  Seymour asked if he could spend the night.  According to C.P., she was left alone in the bed with Seymour when the rest of her family moved to the living room couch.  Her direct examination proceeded in relevant part as follows:

> Q:    Okay.  Do you remember Uncle Joe touching you?
> A:    Yes.
> Q:    Did he touch you inside of your underpants?
> A:    Yes, he did.
> Q:    What did he touch in there?
> A:    He touched me with his hands.

C.P. also testified that Seymour touched her in "[t]he front private."  When the government asked her if Seymour touched her in "the same place that you would wipe after you go . . . pee," she answered "yes."

C.P. testified that she left the bedroom after the encounter and told her mother that she did not want to sleep in the room with Seymour. He spent the rest of the night alone on the couch. C.P. did not report what had occurred to anyone, however, until 2004 because "[she] thought [she] was going to get in trouble."

On cross-examination, Seymour's counsel established that when C.P. reported in 2004 that she had been "fingered" three years earlier, she did not know what the word meant, but she had heard it used on television. C.P. also said that she did not know where on her "private area" Seymour had touched her, and she did not remember whether Seymour had used his hand or his finger, or if any part of his hand had gone "inside" of her.

D.H. then testified how she herself was sexually assaulted by Seymour several months before the alleged assault on C.P. This incident also occurred in D.H.'s bedroom. She testified that Seymour removed her clothing and then had intercourse with her, even though she "tried to push him away." According to D.H., she did not report the rape out of embarrassment, and she subsequently allowed Seymour to share a bed with her daughter C.P. because she did not think that he would harm her children. D.H. also corroborated C.P.'s testimony that C.P. later left the bedroom and said that she did not want to sleep in the same room as Seymour.

The district court further permitted the admission of evidence of prior uncharged sexual assaults against two other women, D.T. and L.M. A third woman, C.S., who had filed an attempted-rape charge against Seymour in 1997, was likewise going to testify against him, but ultimately did not take the stand. D.T. testified that, in 1998, an intoxicated Seymour found her on a bed at the home of Seymour's mother, forcibly removed her shorts, pushed her underwear "across right on the side," and raped her. At the time, D.T. was pregnant with the child of Patrick Seymour, one of Joseph Seymour's brothers, and she asked the prosecutors not to pursue the case.

In addition, L.M., who was Seymour's stepsister, alleged that Seymour had "forced himself" on her while she was talking with him in her bedroom in September of 2003. According to L.M., Seymour "inserted his finger in my vagina," and the experience was painful. L.M. reported the incident to the Hannahville police, but did not pursue charges against Seymour.

The district court admitted the testimony of D.T. and L.M. under Rule 413 of the Federal Rules of Evidence because the court found that the alleged prior sexual assaults occurred close enough in time to the charged sexual assaults and with enough frequency to be sufficiently probative. Both before D.T.'s testimony and again after closing arguments, however, the court instructed the jury that evidence of the uncharged acts was not sufficient in and of itself to prove Seymour guilty beyond a reasonable doubt of the crimes charged in the indictment.

At the close of the government's case, Seymour moved for a directed verdict of acquittal on both counts, alleging that the government had failed to show that a crime had been committed against either D.H. or C.P. He also moved to dismiss Count I on the ground that the government had failed to prove penetration, one of the elements of the charge. The court denied both motions. Seymour then introduced several witnesses who testified that the children in his extended family enjoyed playing with and being baby-sat by Seymour. Mark Seymour, another of defendant's brothers, testified that Seymour and D.H. spent social time together after the alleged rape, and that Mark had observed them "flirting" and sitting "on each other's lap." According to Mark, D.H. never seemed afraid of Seymour, and the two enjoyed "joking around" together.

Jenny Little also testified on Seymour's behalf. She told the jury that she had seen D.H. and Seymour kissing and touching each other around the time of the alleged rape of D.H. Little described finding Seymour and D.H. in bed together during a party, laughing and giggling. Seymour was not permitted, however, to present the testimony of David Joslin, who had provided a written

statement attesting that he had seen D.H. and Seymour acting romantically on a night two years after the alleged rape had occurred. The district court excluded Joslin's testimony pursuant to Rule 608(b) of the Federal Rules of Evidence, based on the government's argument that the evidence was an improper attack on D.H.'s "character for truthfulness."

After Seymour presented his case, he renewed his motion for a directed verdict of acquittal. He also renewed his motion to dismiss Count I, arguing, as before, that there was no evidence that he had penetrated C.P. The district court again denied the motions, and the jury convicted Seymour on both counts as alleged in the indictment. Seymour was sentenced to two concurrent terms of 262 months' imprisonment, a sentence at the upper end of the applicable range under the United States Sentencing Guidelines. Acknowledging that it must consider both the Guidelines and the factors enumerated in 18 U.S.C. § 3553(a), the district court based its sentence on (1) Seymour's "lengthy criminal record," (2) "proof [from] this case that the defendant had several other victims of this type of conduct," (3) "the need to afford adequate deterrence to this kind of criminal conduct," and (4) "the need to reflect the seriousness of these two offenses for which the defendant has been convicted." But the court denied the government's request for an order of restitution, which would have compensated the victims for their losses, because the Presentence Report (PSR) did not detail any costs incurred for medical or psychological examinations. Seymour timely appealed his convictions and sentence.

## II. ANALYSIS

### A.     Admission of the uncharged prior sexual assaults to prove Count I

In regard to Count I, Seymour challenges the admission of the alleged, uncharged prior sexual assaults against the adult females D.T. and L.M. on two alternate grounds. He first argues that, when a defendant is on trial for child molestation, Rule 414 of the Federal Rules of Evidence limits the admission of evidence of prior sexual offenses to those against other *children*. Seymour contends that Rule 414 is the exclusive rule governing child-molestation cases, and not the more general Rule 413. He therefore argues that the jury should have considered the testimony of D.T. and L.M. only with respect to Count II, the adult-victim charge, and that a limiting instruction should have been provided to this effect.

Alternatively, Seymour contends that evidence admitted under either rule must be subjected to the balancing test in Rule 403. *See, e.g.*, *United States v. Benais*, 460 F.3d 1059, 1063 (8th Cir. 2006) ("We have stated that evidence found admissible under Rule 413 or its close analog, Rule 414 ('Evidence of Similar Crimes in Child Molestation Cases'), may still be subject to exclusion under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice."); *Seeley v. Chase*, 443 F.3d 1290, 1294-95 (10th Cir. 2006) (a court must apply Rule 403 to evidence submitted under Rule 413 or Rule 414); *United States v. Crawford*, 413 F.3d 873, 875 (8th Cir. 2005) (applying Rule 403 to evidence submitted under Rule 413); *United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001) (same); *United States v. Lawrence*, No. 97-4480, 1999 WL 551358, at *2 (6th Cir. July 19, 1999) (unpublished) (applying Rule 403 to evidence submitted under Rule 414). Seymour argues that the district court erred when it determined that the testimony of prior uncharged sexual assaults against adults was not unduly prejudicial with respect to the child-molestation charge. Such evidence could not fail to "reverberate" in the minds of the jury, according to Seymour, and thus no jury instruction could neutralize the prejudicial effect of its admission.

#### 1.     *Standard of review*

Seymour did not raise below his present contention that the evidence of prior sexual assaults against adult victims D.T. and L.M. was inadmissible under Rule 414 to prove Count I, the child-molestation charge. Instead, he argued that the testimony of D.T. and L.M. would unfairly prejudice him and confuse the jury under Rule 403. If a defendant does not state "the specific ground" for his

evidentiary objection, and that ground "is not apparent from the context," we review a newly raised objection under the plain-error standard. *See United States v. Haywood*, 280 F.3d 715, 725 (6th Cir. 2002) (holding that "an objecting party is required to state the specific ground of objection only if the ground was not apparent from the context") (quotation marks and citation omitted).

The objection that Seymour now presents on appeal was not apparent from the context of the case or from the statements made below relating to this evidence. Even though the government stated in its motion in limine that Seymour "will undoubtedly argue that sexual assault of an adult is different than child sexual abuse," he never made this argument to the district court when objecting to the admission of D.T.'s and L.M.'s testimony. We therefore review his present objection under the plain-error standard.

The plain-error inquiry involves the following four-step process under Rule 52(b) of the Federal Rules of Criminal Procedure:

> First, we are to consider whether an error occurred in the district court. Absent any error, our inquiry is at an end. However, if an error occurred, we then consider if the error was plain. If it is, then we proceed to inquire whether the plain error affects substantial rights. Finally, even if all three factors exist, we must then consider whether to exercise our discretionary power under Rule 52(b), or in other words, we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings.

*United States v. Thomas*, 11 F.3d 620, 630 (6th Cir. 1993) (interpreting the Supreme Court's decision in *United States v. Olano*, 507 U.S. 725 (1993)); *see also United States v. Jones*, 108 F.3d 668, 670 (6th Cir. 1997) (en banc) (following *Thomas*'s division of the plain-error inquiry into "four distinct, though interrelated, analyses").

### 2.          *Rules 403, 413, and 414*

The question of whether the district court erred in allowing D.T.'s and L.M.'s testimony as relevant evidence regarding the sexual assault against C.P., a minor, turns on a proper interpretation of the interaction among Rules 403, 413, and 414 of the Federal Rules of Evidence. Rules 413 and 414, enacted in 1995, were designed to "protect the public from crimes of sexual violence" by permitting "in sexual assault and child molestation cases . . . evidence that the defendant has committed offenses of the same type on other occasions." 140 Cong. Rec. H8968, H8991 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari). As such, they create an exception to the general ban on propensity evidence contained in Rule 404(b). *See id.* ("The new rules will supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b) . . . [and] authorize admission and consideration of evidence of an uncharged offense for its bearing on any matter to which it is relevant.") (quotation marks omitted).

Rule 413 provides that "[i]n a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant." Fed. R. Evid. 413(a). Sexual assault is defined in Rule 413(d) as "any conduct proscribed by chapter 109A of title 18, United States Code," which includes offenses against both adults and minors. Rule 413, standing alone, is thus broad enough to permit evidence of prior sexual offenses against adults in a case of child molestation.

Seymour argues on appeal, however, that Rule 414—not Rule 413—controls the admissibility of the evidence in question to prove the child-molestation charge in Count I because Rule 414 is more specifically applicable to sexual assaults against minors. Rule 414 provides that "[i]n a criminal case in which the defendant is accused of an offense of child molestation, evidence

of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." Fed. R. Evid. 414(a). Child molestation includes both conduct proscribed in Chapter 109A of Title 18, if committed against a child, and offenses involving child pornography. Rule 414 eliminates the Rule 413 requirement that the alleged sexual contact have occurred without consent. *Compare* Fed. R. Evid. 414(d)(3) *with* Fed. R. Evid. 413(d)(2). But both Rule 413 and Rule 414 contain a clause stating that "[t]his rule shall not be construed to limit the admission or consideration of evidence under any other rule." Fed. R. Evid. 413(c), 414(c). We thus find no incompatibility between the two rules.

Rule 403, which balances the probative value of relevant evidence against the "danger of unfair prejudice, confusion of the issues, or misleading the jury," applies to evidence that would be otherwise admissible under either rule. The district court in this case properly conducted a Rule 403 analysis of the testimony regarding the alleged uncharged sexual assaults against D.T. and L.M. in relation to the child-molestation charge. C.P. was only seven years old at the time of the alleged assault, and thus the testimony of the adults D.T. and L.M. was less probative as propensity evidence with respect to Count I. But the testimony of C.P. and D.H. was markedly similar to the claims of D.T. and L.M., and this similarity enhances its probative value. *See Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 144 (3d Cir. 2002) (holding that "where the past act is demonstrated with specificity and is substantially similar to the act(s) for which the defendant is being sued, it is Congress's intent that the probative value of the similar act be presumed to outweigh Rule 403's concerns"). All four alleged victims were part of Seymour's extended family, and all four were allegedly assaulted on a bed after Seymour arrived in an intoxicated state. After consideration, the district court determined that the probative value of the testimony of D.T. and L.M. outweighed the danger of unfair prejudice to Seymour. We find no error in the decision made below on this issue.

## B.    Admission of the uncharged prior sexual assaults to prove Count II

Although Seymour did not object to the admissibility of D.T.'s and L.M.'s testimony based on Rule 413, he did argue that "the alleged sexual acts sought to be admitted by the government under FRE 413 bear no relevance to the issues in dispute at this trial, and, in any event, would be substantially more prejudicial than probative." This objection was made on the basis of Rule 403.

As the district court noted, evidence otherwise admissible under Rule 413 is still subject to the Rule 403 balancing test. *See, e.g.*, *United States v. Crawford*, 413 F.3d 873, 875 (8th Cir. 2005) (applying Rule 403 to evidence submitted under Rule 413); *United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001) (same); *United States v. Guardia*, 135 F.3d 1326, 1330 (10th Cir. 1998) (same). Seymour specifically argued below that the Rule 403 balancing test weighed in favor of exclusion of the prior-sexual-assault evidence because the jury would confuse the testimony relating to the offenses charged in this case with that regarding other, uncharged sexual assaults, and because he would be forced "to devote significant time and effort during the trial refuting allegations made and *never charged* years ago." (Emphasis in original.)

Evidentiary rulings are reviewed under the abuse-of-discretion standard. *United States v. Talley*, 164 F.3d 989, 998 (6th Cir. 1999). In reviewing challenges to evidence based on Rule 403, we must give "the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *United States v. Schrock*, 855 F.2d 327, 333 (6th Cir. 1988) (citations and quotation marks omitted). The district court found the prior-assaults evidence highly probative based on (1) the "close[ness] . . . in time" of the prior acts to the current charges, (2) the "similarity of the prior acts," and (3) the "alleged frequency" of the prior acts.

As stated above, Rule 413 was enacted as an exception to the default position set forth in Rule 404(b) that propensity evidence is presumptively more prejudicial than probative. The district

court clearly outlined its reasons for admitting the prior-assault evidence, and we find that the admission of this evidence was not an abuse of discretion.

## C.        Exclusion of David Joslin as a witness

In addition to Seymour's contention that the district court erred in admitting the testimony of D.T. and L.M., he argues that the district court improperly excluded the testimony of David Joslin. At trial, Seymour sought to introduce testimony from his friend Joslin, who had observed D.H. and Seymour hugging and kissing and "act[ing] as if they were a couple" at a party held two years after the alleged sexual assault. The government objected to the testimony. In response, Seymour asserted that he wanted to introduce Joslin's testimony under Rule 405 of the Federal Rules of Evidence. Rule 405 governs the permissible methods of proving the character or character traits of a person, including the use of opinion evidence or evidence of specific instances of conduct. The Rule provides as follows:

> (a) **Reputation or opinion.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
> (b) **Specific instances of conduct.** In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct.

Fed. R. Evid. 405.

This court has previously noted that inquiry into "relevant specific instances of conduct" on cross-examination is allowed only where it goes to the accuracy of the character witness's testimony. *See United States v. Green*, 305 F.3d 422, 431 (6th Cir. 2002) (discussing allowable character evidence under Rule 405(a)). In this case, however, Seymour failed to cross-examine D.H. about her conduct allegedly observed by Joslin, and her character was not an essential element of the charge against Seymour. Joslin's testimony was thus inadmissible under either Rule 405(a) or 405(b).

The district court also considered the application of Rule 608(b) of the Federal Rules of Evidence. Rule 608(b) bars the admission of extrinsic evidence of specific instances of conduct intended to attack a witness's character for truthfulness. *See United States v. Jackson-Randolph*, 282 F.3d 369, 382-83 (6th Cir. 2002) (finding no abuse of discretion in the exclusion of witness testimony regarding specific instances of conduct pursuant to Rule 608(b)). When responding to the government's objection, defense counsel in fact expressly denied that Joslin's testimony was intended to attack D.H.'s character. But the district judge ultimately sustained the government's objection to Joslin's proposed testimony, finding, despite the denial by defense counsel, that the evidence was offered for the purpose of attacking D.H.'s character for truthfulness under Rule 608(b). We find no abuse of discretion in excluding Joslin's testimony.

And even if the district court's ruling was erroneous, Jenny Little had already testified for the defense about observing D.H. and Seymour acting in friendly, even sexual, ways towards one another. Joslin's testimony would thus have been cumulative. *See* Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by . . . considerations of . . . needless presentation of cumulative evidence."). Any error, therefore, would have been harmless.

On appeal, Seymour contends for the first time that the district court erred in excluding Joslin's testimony as evidence of consensual sexual behavior between D.H. and Seymour. His

failure to raise below this ground for admissibility means that we review the district court's evidentiary ruling for plain error. *See, e.g.*, *United States v. Matthews*, 440 F.3d 818, 824-25 (6th Cir. 2006); Fed. R. Evid. 103(d) ("Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court."). The plain-error inquiry is the four-step process set forth above.

Admissibility of evidence of "past sexual behavior" or "alleged sexual predisposition" is governed by Rule 412 of the Federal Rules of Evidence. Rule 412(c) requires that a party intending to offer evidence of "specific instances of sexual behavior by the alleged victim . . . to prove consent" under 412(b) must (1) file a written motion 14 days before trial which specifically describes both the evidence and the purpose for which it will be offered, and (2) serve the motion on all parties and notify the alleged victim. Fed. R. Evid. 412(b)(1)(B), (c)(1). The record indicates that Seymour failed to follow this notice procedure. Joslin's testimony was therefore inadmissible under Rule 412. We thus conclude that the district court did not err in excluding Joslin's testimony.

**D.      Sufficiency of the evidence to support Count I**

Seymour next contends that there was insufficient evidence to sustain a guilty verdict on Count I. We review a challenge to the sufficiency of the evidence de novo, and consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). All of the evidence admitted at trial, including improperly admitted evidence, may be considered in determining whether sufficient evidence supports a guilty verdict. *United States v. Quinn*, 901 F.2d 522, 529-32 (6th Cir. 1990). In addition, "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999) (citations and quotation marks omitted).

Seymour has limited his insufficiency claim to the contention that "there was no evidence of penetration of the genital opening of C.P." Section 2241(c) of Title 18, the statute that governs Count I, prohibits "knowingly engag[ing] in a sexual act with another person who has not attained the age of 12 years." A "sexual act" is defined as "the *penetration*, however slight, of the anal or genital opening of another by a hand or finger or by any object." 18 U.S.C. § 2246(2)(C) (emphasis added).

At trial, C.P. provided evidence on direct examination regarding the alleged sexual assault from which a reasonable juror could infer that she had been penetrated by Seymour's finger. She testified that Seymour "touched me between my legs" where "you would wipe after you go . . . pee," and she answered "yes" to questions like "[d]id he touch you inside of your underpants" and "it was actually his fingers right on your bare skin?" Although C.P. testified on cross-examination that she could not remember whether Seymour "went inside" her, a reasonable juror could still credit her statements made on direct examination. *See United States v. Sanders*, 404 F.3d 980, 987 (6th Cir. 2005) (holding that "certain discrepancies" in a witness's testimony, which were elicited during cross-examination, were "irrelevant to the sufficiency of the evidence analysis because they improperly ask us to weigh the evidence or to assess [the witness's] credibility").

C.P.'s testimony, in combination with the evidence provided by D.H., D.T., and L.M., was sufficient to permit a reasonable juror to infer that C.P. was penetrated because D.H., D.T., and L.M. all testified that Seymour penetrated each of them during similar sexual assaults. A reasonable juror—who credited C.P.'s testimony on direct examination— could find beyond a reasonable doubt that Seymour also penetrated her genital opening with his finger. We therefore conclude that the evidence of penetration was sufficient to support Seymour's conviction on Count I.

**E.        Seymour's sentence**

Finally, Seymour challenges the reasonableness of his 262-month sentence.  He argues that the district court "glossed over many of the factors listed in § 18 U.S.C. 3553(a)" and "failed to give reasoned consideration to the psychological issues raised" in the PSR.

We review de novo the district court's application of the Sentencing Guidelines.  *United States v. Corrado*, 304 F.3d 593, 607 (6th Cir. 2002).  When a defendant challenges a district court's sentence pursuant to § 18 U.S.C. 3553(a), the sentence is reviewed for reasonableness.  *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005).  Reasonableness review requires us to consider both the length of the sentence and "the factors evaluated and the procedures employed by the district court in reaching its sentencing determination."  *Id.*    The review thus encompasses substantive as well as procedural reasonableness.  *United States v. McBride*, 434 F.3d 470, 476 n.3 (6th Cir. 2006) (holding that "there are both *substantive* and *procedural* components to our reasonableness review") (emphasis in original).

In determining the particular sentence to be imposed, courts must consider:

(1)        the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)        the need for the sentence imposed--
    (A)      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)      to afford adequate deterrence to criminal conduct;
    (C)      to protect the public from further crimes of the defendant; and
    (D)      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3)        the kinds of sentences available;
(4)        the kinds of sentence and the sentencing range established for--
    (A)      the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
        . . .
(5)        any pertinent policy statement--
    (A)      issued by the Sentencing Commission
        . . .
(6)        the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7)        the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The district court acknowledged the now-advisory nature of the Guidelines and that it must consider the factors in 18 U.S.C. § 3553(a).  Based on Seymour's criminal history, the need for deterrence, and the need to reflect the seriousness of the crimes for which Seymour was convicted, the district court sentenced Seymour at the top of the applicable Guidelines range.  This Guidelines sentence is entitled to a "rebuttable presumption of reasonableness."  *See United States v. Richardson*, 437 F.3d 550, 553-54 (6th Cir. 2006) (citations and quotation marks omitted).

Seymour argues, however, that the district court did not consider "Seymour's painful family history and emotional problems," and that his sentence is "substantively unreasonable."  The district court, however, in fact demonstrated that it was aware of Seymour's psychological impairments when it "recommended that Mr. Seymour be afforded appropriate mental health sex offender . . . treatment, as well as participation in the Bureau of Prisons 500 hour intensive substance abuse

program." In addition, the Sentencing Commission has stated that mental health issues, drugs, and an underprivileged upbringing "are not ordinarily relevant" in determining whether to render a below-Guidelines sentence, U.S.S.G. §§ 5H1.3, 5H1.4, 5H1.12, and that district courts must take into account such Sentencing Commission policies under § 3553(a)(5). We conclude that the district court adequately articulated its reasoning for sentencing Seymour to 262 months of imprisonment, and that his sentence reflects a reasonable consideration of the § 3553(a) factors.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.