NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0119n.06

**No. 12-4492**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 11, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| JEROME RABINOWITZ, | ) | |
| | ) | **OPINION** |
| Defendant-Appellant. | ) | |
| | ) | |

**Before: MOORE and COOK, Circuit Judges; GWIN, District Judge.***

**JAMES S. GWIN, District Judge.** Jerome Rabinowitz appeals his conviction on twenty-five counts of mail fraud, three counts of money laundering, nine counts of wire fraud, and two counts of making false claims against the United States. The charges stem from Rabinowitz's contracts to supply computer chips to the Department of Defense.

With his appeal, Rabinowitz says that the district court should have granted a mistrial after some jurors received evidence regarding the military end use of one of the products, that the government violated the Jencks Act by failing to provide impeachment evidence for one of the witnesses, that the district court wrongly allowed a witness to testify about the definition of a

---

*The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

contract term, and that the district court wrongly allowed the government to show the jury a picture of a diamond ring. We **AFFIRM**.

## I. BACKGROUND

Jerome Rabinowitz owned J&W Technologies in West Hempstead, New York. J&W Technologies entered into contracts with the Department of Defense to supply certain processors and microchips. J&W Technologies also subcontracted with Great Lakes Sales & Associates and supplied processors and microchips for Great Lakes's contracts with the Department of Defense.

Some of J&W Technologies and Great Lakes's contracts were for parts that were classified as "critical application items" or required the parts be manufactured by manufacturers on a Qualified Parts/Manufacturers List ("QPL/QML"). "Critical application items" are items essential to weapons performance, operation, and the preservation of life or safety of operating personnel. And parts on the QPL/QML need be tested to ensure they are the highest reliable parts available from manufacturers that meet strict inspection and testing requirements.

Instead of sending parts that complied with the contract requirements, Rabinowitz submitted parts from non-approved manufacturers and parts that had been manufactured years earlier than the contracts allowed. Nevertheless, he submitted paperwork that stated the parts complied with the contract requirements. Based on the fraudulent paperwork that Rabinowitz submitted, the Department of Defense paid Rabinowitz by wire transfer.

A grand jury charged Rabinowitz with thirty-two counts of mail fraud, three counts of money laundering, nine counts of wire fraud, and two counts of making false claims against the United

States. The grand jury also charged two forfeiture counts against Rabinowitz: one for $395,926.94 and one for a 5-carat diamond ring that was allegedly purchased with laundered funds.

After a trial, a jury found Rabinowitz not guilty on seven counts of mail fraud but found him guilty of all of the other charges and found him guilty of the two forfeiture counts. The district court sentenced Rabinowitz to 48 months of incarceration and $492,024.53 of restitution and later issued a final order of forfeiture on the $395,926.94 and the diamond ring.

Rabinowitz timely appealed.

## II. DISCUSSION

Appellant Rabinowitz makes four challenges to his conviction. First, Rabinowitz says that the district court should have granted a mistrial because during deliberations, some jurors saw evidence or heard about evidence from another juror about the end use of one of the products. In a pretrial ruling under Federal Rule of Evidence 403, the district court had excluded evidence of the end use of the parts. After that ruling and after the jury retired to deliberate, the United States failed to redact the end use from the exhibits before giving them to the jury. One of the jurors read the end use of one of the parts and told others about it.

Second, Rabinowitz says that the United States violated the Jencks Act and his confrontation rights by failing to produce evidence that a witness worked for a company that Rabinowitz owed a small debt to. At sentencing, the employer of one of the trial witnesses submitted a claim for restitution on the basis of a debt Rabinowitz allegedly owed.

Third, Rabinowitz says that the district court should not have allowed one of the witnesses to define the term "critical application item." And finally, he says that the district court should not

have allowed prosecutors to show a picture of the diamond ring. The ring was the subject of a forfeiture count to the jury.

All of these arguments lose.

## A.    Improperly Redacted Exhibits

Before trial, Rabinowitz moved *in limine* under Federal Rule of Evidence 403 to exclude evidence of the end use of the parts. Rabinowitz said that the end use was irrelevant to the charges and that the unfair prejudice from the jury hearing that some of the parts were used on important military vessels and aircraft would outweigh the probative value of the evidence.

The district court granted the motion. The Court concluded that although the United States needed to establish that the parts' requirements were material to the government contracts, the United States could establish materiality with the QPL/QML and the "critical application item" designations. Therefore, the incremental probative value of the end use was substantially outweighed by the substantial risk of confusing the jury.

However, after the jury had deliberated for approximately two-and-a-half hours, the government informed the district court that the government had inadvertently failed to redact evidence of the end use of the parts from the trial exhibits that were submitted to the jury.[1] Specifically, the government had introduced into evidence memos from a parts tester that illustrated how the parts Rabinowitz supplied did not meet Department of Defense requirements. Those memos included a one-sentence description of the end use of the inadequate parts.

---

[1]The United States later admitted that it had not properly redacted other exhibits, but a voir dire of the jury revealed that no juror had seen those exhibits.

No. 12-4492, *United States v. Jerome Rabinowitz*

The district court conducted a voir dire of the jury to determine whether any juror had read the end use of the parts. One juror said that she had seen the end use of one of the parts and had told the other jurors about it. The district court then individually interviewed each juror.

During the individual interviews, the district court learned that the initial juror had seen that one of the parts was used on a Navy aircraft carrier named the *Ronald Reagan*.[2] That initial juror and one other juror made statements that suggested they had thought about the possible consequences of a part failing on the *Ronald Reagan*. The district court dismissed those two jurors and replaced them with alternates.

Many of the remaining jurors had heard that one of the parts was used on the *Ronald Reagan*. One juror heard that a part had failed on the *Ronald Reagan*. And another juror heard the word "nuclear" in connection with the *Ronald Reagan*.

All of the remaining jurors said that they could put the end use of the parts out of mind and could be fair and impartial jurors.

Rabinowitz moved for a mistrial on the ground that the jury had been exposed to the end use of the parts. The district court denied the motion.

This Court reviews a district court's decision on a motion for a mistrial under an abuse-of-discretion standard.[3] Where a jury is improperly exposed to evidence,

> the subsequent striking of the evidence along with clear instructions to the jury to disregard it, ordinarily will cure the error. Only if the erroneously admitted evidence is of an exceptionally prejudicial character, such that its withdrawal from

[2]The *U.S.S. Ronald Reagan* is a *Nimitz*-class nuclear-powered aircraft carrier.

[3]*United States v. Wimbley*, 553 F.3d 455, 460 (6th Cir. 2009) (citing *United States v. Davis*, 514 F.3d 596, 613 (6th Cir. 2008)).

- 5 -

consideration by the jury cannot be expected to remove the harm, will it be appropriate to grant a new trial.[4]

Moreover, when the jury has been exposed to an improper communication during deliberations, the defendant must prove that there was actual prejudice from the improper contact.[5]

Here, Rabinowitz cannot show he was actually prejudiced by the jury's knowledge that one part was used on the *Ronald Reagan*. Two jurors appeared to express some concerns about the possibility of a part failure. But the district court removed those jurors. The remaining jurors all said that they could be fair and impartial.

Moreover, Rabinowitz cannot show that any purported prejudice was so great that a curative instruction could not cure the error. The United States charged Rabinowitz with providing non-conforming microprocessors and computer chips to the Department of Defense. The possibility that at least some of the parts would be used on military equipment underlay the entire trial. No specific evidence pointed to where the circuit cards would be used. The fact that one of the parts actually was used *somewhere* on a Navy vessel did not greatly increase the risk of riling the jury. Therefore, the district court's curative instructions were sufficient to remove any prejudice for the remaining jurors.

Accordingly, the district court did not abuse its discretion.

**B.    Impeachment Evidence**

---

[4]*United States v. Carr*, 5 F.3d 986, 993 (6th Cir. 1993) (citing *United States v. Wells*, 431 F.2d 432, 433 (6th Cir. 1970) (per curiam)).

[5]*See United States v. Walker*, 1 F.3d 423, 431 (6th Cir. 1993) (quoting *United States v. Zelinka*, 862 F.2d 92, 95-96 (6th Cir. 1988)).

During the trial, Ronald Hildebrandt, an executive at New Jersey Semiconductors, testified about Rabinowitz's purchases from the company. The United States used his testimony to authenticate purchase orders relevant to certain counts of the indictment that showed Rabinowitz ordered parts that did not comply with the government contracts and to show that Rabinowitz had conversations about exactly which parts would be shipped. His testimony was conventional and not significant to the trial.

Before sentencing, Hildebrandt, on behalf of New Jersey Semiconductors, submitted a request for restitution from Rabinowitz based on a debt of $1,992.50. Rabinowitz filed an objection to the request for restitution before sentencing and renewed his objection at the sentencing. At the sentencing, Rabinowitz's counsel remarked that the debt went to Rabinowitz's confrontation rights relating to possible bias.[6] Rabinowitz did not move for a mistrial based on the discovery of the debt. The district court did not include the debt in the restitution award.

Now, Rabinowitz says that the government violated the Jencks Act and the Confrontation Clause by failing to produce evidence of the debt before trial.

Because Rabinowitz did not move for a mistrial nor present his argument in such a way that would alert the district court that Rabinowitz was seeking to vacate his conviction, this Court reviews this claim for plain error.[7]

> A defendant bears the burden of proof on plain error review and must show that there is "1) error, 2) that is plain, and 3) that affects substantial rights. If all three conditions are met, an appellate court may exercise its discretion to notice a forfeited

---

[6]R. 101 at 67:6-14 (PageID #1710).

[7]*See United States v. Seymour*, 468 F.3d 378, 384 (6th Cir. 2006).

error, but only if 4) the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings."[8]

Rabinowitz cannot show there was an error, let alone one that was plain. Rabinowitz cannot identify what information he believed the United States possessed but did not provide to him. The Jencks Act only requires the United States to provide "any statement" "in the possession of the United States."[9] And to show a violation of the Confrontation Clause, a defendant must show that he was prevented from engaging in otherwise appropriate cross-examination.[10]

Rabinowitz cannot meet either standard because he cannot identify any information the United States possessed but did not give him. Rabinowitz merely asserts that there was evidence of the debt that he did not receive. The record does not show that the United States withheld any statements about or other evidence of the debt, so Rabinowitz cannot show a violation of either the Jencks Act or the Confrontation Clause.

Moreover, Rabinowitz cannot show that the alleged error seriously affected the fairness of the proceeding. The witness's testimony established that Rabinowitz ordered some parts from New Jersey Semiconductors that did not meet Defense Department requirements and that Rabinowitz would speak on the phone to New Jersey Semiconductors about the orders. However, Hildebrandt's testimony mostly laid the foundation for and authenticated documentary exhibits and was limited

---

[8]*United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005) (citation omitted) (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)).

[9]18 U.S.C. § 3500(b).

[10]*Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).

to some counts. The only additional information Hildebrandt's testimony provided was to show conversations Rabinowitz had about the orders.

More important, any evidence that Rabinowitz owed approximately $2,000 to the witness's employer would be inconsequential evidence of bias. And given the limited value of the witness's testimony, Rabinowitz cannot show the alleged error "seriously affect[ed] the fairness" of the trial.

Accordingly, the district court did not plainly err by failing to vacate Rabinowitz's conviction *sua sponte*.

## C.     Definition of "Critical Application Item"

The United States defined the term "critical application item" in its opening statement. Rabinowitz did not object.

Later in the trial, the United States asked a witness to define the term "critical application item." Rabinowitz objected. At sidebar, the district court told the government that the definition did not violate the court's order *in limine* but that any additional comments would violate the order. Rabinowitz's counsel added, "He can't elaborate on anything other than what that says, or we'll have a problem."[11]

The witness then read the definition into the record: "essential to weapons performance, operation, the preservation of life or safety of operating personnel, as determined by the military services."[12]

---

[11]R. 108 at 29:13-14 (PageID #1795).

[12]*Id.* at 31:9-12 (PageID #1797).

Rabinowitz now says that the district court erred by allowing the witness to define the term in violation of his due process rights.

Again, Rabinowitz did not present his argument in such a way that would alert the district court that he sought the exclusion of the definition; therefore, the Court reviews this claim for plain error as well.[13]

In order to prove wire fraud or mail fraud, the United States needed to show that the part requirements were material.[14] A requirement is material "if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decision making body to which it was addressed.'"[15]

The district court reasonably concluded that the United States did not need to prove the end use of the parts to show that their requirements were material because the fact that the parts were critical application items itself showed materiality. The United States could, therefore, offer evidence that the parts were critical application items.

Rabinowitz says that the reference to health, safety, and welfare of personnel unduly prejudiced the jury. However, the district court could reasonably conclude that the additional prejudice of learning in which ways a part was critical did not substantially outweigh the probative value in allowing the jury to know the definition of a technical term used during the trial. Therefore, the district court did not plainly err in allowing the witness to define the term.

---

[13]*See Seymour*, 468 F.3d at 384.

[14]*See Neder v. United States*, 527 U.S. 1, 20-25 (1999).

[15]*Id.* at 16 (quoting *United States v. Gaudin*, 515 U.S. 506, 509 (1995)).

Rabinowitz's claim that he was denied due process fails because an evidentiary ruling only violates due process if the ruling "is so egregious that it results in a denial of fundamental fairness."[16] Here, the ruling was reasonable; therefore it did not violate due process.

Accordingly, the district court did not err by admitting the definition of "critical application item."

**D.    Showing the Diamond Ring**

During the government's opening and during the testimony of a witness on Rabinowitz's use of the money he received for the government contracts, the United States showed a picture of the diamond ring that was the subject of one of the forfeiture counts. Rabinowitz objected each time.

This Court reviews the district court's decision on the admissibility of evidence for abuse of discretion.[17] The district court is given broad discretion where relevance and prejudice are at issue.[18]

Rabinowitz says that showing a 5-carat diamond ring to the jury unfairly prejudiced him because it showed his wealth to the jury.

The United States alleged that Rabinowitz purchased the ring with money that he laundered and therefore sought forfeiture of the ring. The parties agreed to submit the forfeiture charge to the jury. And the United States showed the ring to the jury only twice: once in opening arguments and

---

[16]*Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

[17]*United States v. Blackwell*, 459 F.3d 739, 752 (6th Cir. 2006).

[18]*United States v. Warshak*, 631 F.3d 266, 330 (6th Cir. 2010).

once while describing how Rabinowitz laundered the money he received from the United States to purchase the ring.

Given that the jury needed to decide whether laundered funds had purchased this particular diamond ring, the district court reasonably decided that the jury could view the ring. The court could reasonably conclude that the prejudice in having the jury see that Rabinowitz purchased a luxury item at the time of the alleged wrongdoing did not substantially outweigh the ring's probative value on the forfeiture count.[19]

Therefore, the district court did not abuse its discretion in allowing the jury to see the ring.

### III.  CONCLUSION

For the reasons above, we **AFFIRM** Rabinowitz's conviction.

---

[19]*United States v. Jackson-Randolph*, 282 F.3d 369 (6th Cir. 2002) is not applicable in this case.  In *Jackson-Randolph*, the display of wealth or extravagant lifestyle was used as a motive for committing crimes.  But in this case, the ring was not shown to prove a motive to commit other crimes; the ring was shown merely to show the jury the object of a forfeiture charge.