**UNITED STATES of America**

v.

**Rob B. YAMMINE, Sergeant (E–5), U.S. Marine Corps.**

**NMCCA 200800052.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 15 June 2007.

12 May 2009.

COUCH, S.J., delivered the opinion of the Court in which O'TOOLE, C.J., GEISER and VINCENT, S.JJ., and KELLY, PRICE, MAKSYM, and STOLASZ, JJ., concur. BOOKER, J., filed an opinion concurring in the result. Chief Judge O'TOOLE, Senior Judge COUCH and Judge MAKSYM heard oral argument in the case.

For Appellant: David Sheldon; LT W. Scott Stoebner, JAGC, USN.

For Appellee: Capt Geoffrey Shows, USMC.

## PUBLISHED OPINION OF THE COURT

COUCH, Senior Judge:

After entering mixed pleas, the appellant was convicted by a general court-martial, composed of officer and enlisted members, of larceny, sodomy with a child who had at-

tained the age of 12 but was under the age of 16, and indecent acts with a child, in violation of Articles 121, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 925, and 934. The appellant was sentenced to confinement for 8 years, reduction to pay grade E–1, forfeiture of all pay and allowances, a fine of $7,000.00 with an additional year of confinement if the fine was not paid, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

The appellant alleges four assignments of error: (1) that the military judge erred in permitting the Government to introduce evidence of computer file names, found on the appellant's personal computer, that are suggestive of containing child pornography; (2) that the appellant is entitled to administrative credit for the initial review officer's abuse of discretion in continuing his pretrial confinement; (3) that the evidence is factually insufficient to support his convictions for sodomy and indecent acts with a child; and (4) that the appellant has been denied his due process right to speedy post-trial review.[1] After considering the record, the appellant's briefs and assignments of error, the Government's answers, and the oral arguments of counsel, we conclude that the findings and the sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c). We hold that the admission of some, but not all, of the computer evidence presented by the Government was error, however that error was harmless beyond a reasonable doubt. We also conclude the post-trial delay was harmless beyond a reasonable doubt, and we find insufficient merit in the appellant's other assignments of error to warrant relief.

## I. Background

At the time of his alleged offenses, the appellant was a military policeman assigned as a drill instructor to Marine Corps Recruit Depot (MCRD) Parris Island, South Carolina. On the afternoon of 10 July 2006 the appellant encountered JP at the base library, while each of them were using computers to access the internet. JP was a 14–year–old boy staying on base for the summer with his sister and brother-in-law, a Marine corporal. At this point, the stories of the appellant and JP diverge.

JP testified that the appellant accosted him while using the bathroom of the library, and asked whether he was "gay or anything like that." Record at 492. JP answered that he was not, upon which the appellant offered to "show you something and then you can really decide if you are or not," whereupon the appellant began to perform fellatio on JP. *Id.* Approximately 10 to 20 seconds into the act some recruits attempted to enter the bathroom, and the appellant yelled at them to leave. The appellant and JP then left the library, and the appellant offered to give JP a ride home in his car. JP accepted the appellant's offer and placed the bicycle he was riding in the trunk of the appellant's car.

The appellant drove JP back to his barracks and invited JP up to his room. Once inside the room, the appellant changed into a pair of green gym shorts, and asked JP to remove his shoes and pants, which he did. JP testified that the appellant produced a pair of handcuffs and lubricant from a nightstand drawer, and placed the handcuffs on JP, with his hands behind his back. The appellant next applied the lubricant to his penis and JP's penis, then anally sodomized JP while on top of his bed. JP testified that after the appellant finished, they both got dressed and the appellant drove him to a place near his sister's house. The appellant gave JP a card with his cell phone number written on it, and invited JP to give him a call if he wanted "to hang out again." *Id.* at 504. JP admitted that he called the appellant on his cell phone several times after the alleged incidents because he "didn't know really what to do about the whole situation" and he "needed someone to talk to." *Id.* at 507.

The appellant testified that he did not have any form of sexual contact with JP. He ad-

---

1. The last three assignments of error were submitted in a supplemental brief pursuant to *United*

*States v. Grostefon,* 12 M.J. 431 (C.M.A.1982).

mitted that he confronted JP in the library bathroom for looking at pornographic material on the internet, and that he ordered two recruits to leave the bathroom. *Id.* at 815–21. The appellant testified that after scolding JP for looking at pornography, the boy began to cry and related to him that his Marine brother-in-law picked on him because he thought JP was gay. *Id.* at 821. The appellant admitted that he gave JP his cell phone number in an attempt to be helpful, and in an effort to recruit JP to join the Marine Corps. The appellant further admitted that JP followed him to his barracks, where the appellant invited JP to his room to discuss JP's future ambitions. *Id.* at 824, 828.

Twelve days after the incidents in the library bathroom and the appellant's barracks room, JP's brother-in-law learned of the appellant's alleged conduct and contacted law enforcement authorities. The Naval Criminal Investigative Service (NCIS) began an investigation and interviewed JP, who correctly identified the location of the appellant's barracks room. During an interview with a social worker, JP asserted that the appellant took a picture with a cell phone while sodomizing him, and that there was an orange stain left on the bedspread after the sex act. JP underwent a physical examination which was negative for any signs of trauma or injury.

An NCIS agent arranged a recorded telephone intercept between the appellant and JP, in which the appellant agreed to meet JP at a hotel on base. *Id.* at 662–63. When the appellant failed to show up at the agreed time, the NCIS agent searched for and found him 30 to 45 minutes later, on base. During a subsequent interview by the NCIS agent, the appellant admitted that he knew JP and that he, the appellant, was bisexual.[2] The appellant claimed that he rebuffed sexual advances by JP because he knew JP was underage, and was adamant that no sexual

contact had occurred between them. The appellant consented to a search of his barracks room and NCIS seized various items, including the appellant's personal laptop computer, a bedspread, assorted CDs and DVDs, and three cell phones.[3] The appellant's nightstand was searched and found to contain two containers of lubricating jelly, one of which was opened, but no handcuffs.

A portion of the Government's evidence at trial involved the contents of the laptop computer. An examination by an expert from the Defense Computer Forensics Laboratory (DCFL) revealed that the appellant's name was listed as the only user profile found on the computer, which contained three types of evidence: file names of purported images of child and adult pornography ("file name evidence"); a movie frame image associated with file name "boy.kiddy.pedo.DX17[1].mpeg" that purported to depict two subjects engaged in intercourse ("movie frame evidence"); and remnants of approximately 4,000 internet searches using the term "Lolita," which the DCFL expert testified is a commonly known search term for pedophiliac subjects ("internet search evidence"). *Id.* at 280, 732; Prosecution Exhibit 5 at 10. The expert testified that the "file name evidence" was located in a folder connected to a program called "Kazaa," which is used to share files over the internet. The images related to the file names had been downloaded in November 2004, but were subsequently deleted from the computer's hard drive and the hard drive was defragged. *Id.* at 276–80. The "file name evidence" discovered by the DCFL expert included the following:[4]

(1) boy.kiddy.pedo.DX17[1].mpeg

(2) C:/Program Files/Kazaa/My Shared Folder/10 y teen boys sex (1).jpg

(3) C:/Program Files/Kazaa/My Shared Folder/pedo preteen boy little boy get (1).jpg

---

**2.** The appellant also admitted to committing Basic Allowance for Housing (BAH) fraud, which gave rise to the appellant's guilty plea to larceny, and is not related to his assignments of error.

**3.** After forensic examination, evidence of the appellant's semen was found on the bedspread, but

no DNA evidence belonging to JP was discovered. The cell phones did not contain any photographic images depicting JP.

**4.** We will refer to these file names by their numbers in our analysis.

(4) C:/Program Files/Kazaa/My Shared Folder/gay teen-skinny boy sucked.jpg

(5) C:/Program Files/Kazaa/My Shared Folder/pedo preteen boy little boy gets sucked.jpg

(6) C:/Program Files/Kazaa/My Shared Folder/pedo preteen boy boner ... mal19–72.jpg

(7) C:/Program Files/Kazaa/My Shared Folder/2 Boys–Teen Boy Fucking Preteen–B 26W.jpg

(8) C:/Program Files/Kazaa/My Shared Folder/PEDO–Boy Fun Series 1.jpg

(9) C:*Documents and Settings*Rob Yammine*Incomplete*T–1202102–UNDERAGED BOY FUCKED BY JUDGES R@YGOLD (7) child porn sex underage illegal incest lolita preteen !Y! incest zYz young KIDDY DAD nude French illegal pee forced violated.wmv

(10) C:*Documents and Settings*Rob Yammine*Incomplete*T–51175444–11 yr yng Lolita riding dad (preteen incest kiddy rape)(1)(2)(1).mpeg

(11) C:*Documents and Settings*Rob Yammine*Incomplete*T–80618–2_fuck dicks young sex teen ass boy blondes preteen cum gay cock teens little bareback boys(1).jpg

(12) C:*Documents and Settings*Rob Yammine*Incomplete*T–5385287–sex pjk rbv maria kdv nudists.mov

(13) Fucking very fast in the ass by three (illegal_preteen_underage_lolita_kiddy_child_incest_xxx_porno_gay_fuck_young_naked_nude_ little_g.mpeg

Appellate Exhibit XXIX at 1. The Government's computer expert testified that the location of the "file name evidence" on the computer indicated that the appellant would have had to specifically select the file name from the internet and click on it before it downloaded to his computer. Record at 277.

The appellant moved *in limine* to prohibit the introduction of the "file name evidence" on the grounds that the evidence was not relevant and, in the alternative, any probative value of the evidence was substantially outweighed by its prejudicial effect. AE XVII (citing MILITARY RULE OF EVIDENCE 403, MANUAL FOR COURTS-MARTIAL, UNITED

STATES (2005 ed.) and *United States v. Berry*, 61 M.J. 91 (C.A.A.F.2005)). The Government responded that all of the "file name evidence" was admissible under MIL. R. EVID. 414, as propensity evidence to show the appellant's prurient interest in children; as within the context of this prosecution for offenses involving child molestation; and admissible under MIL. R. EVID. 404(b) as evidence of the appellant's motive and intent to satisfy his lust and sexual desires. Record at 346–48 (citing *United States v. Mann*, 26 M.J. 1 (C.M.A.1988)). We note that neither the "movie frame evidence" nor the "internet search evidence" were addressed within the appellant's motion *in limine*. For reasons discussed *infra*, the military judge denied the appellant's motion *in limine*, Appellate Exhibit XXIX, and all of the contested evidence was admitted.

The members acquitted the appellant of the specification of forcible sodomy related to the library bathroom incident, but convicted him of the lesser included offense of indecent acts with a child who had attained the age of 12 but was under the age of 16. The members convicted the appellant of the specification of sodomy related to the barracks room incident, but excepted out the words "by force and without consent." The members acquitted the appellant of the charge of kidnapping related to JP's presence in the appellant's barracks room.

## II. Discussion

### A. Admissibility of "File Name Evidence" of Child Pornography

This case presents an issue of first impression for military jurisprudence: whether file names suggestive of possession of child pornography constitute a qualifying offense under MIL. R. EVID. 414, and are therefore admissible as propensity evidence against an accused in a prosecution for alleged acts of child molestation. We hold that they are. Even though not all of the computer evidence in this case should have been admitted under MIL. R. EVID. 414, we hold that the military judge's abuse of discretion as to the admission of some of this evidence constituted harmless error.

The military judge found, in the alternative, that the computer evidence in this case would also be admissible to show the appellant's "planned motive" of intent to gratify his sexual desires, as an element of the lesser included offense of indecent acts with a child. Record at 365–66. Recognizing that MIL. R. EVID. 414 "provide[s] for more liberal admissibility of character evidence in criminal cases of child molestation" than if it were offered as character evidence under MIL. R. EVID. 404(b), we will first address whether the propensity evidence in this case was properly admitted under MIL. R. EVID. 414. *United States v. Bare*, 65 M.J. 35, 37–38 (C.A.A.F.2007)(quoting MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.), Analysis of the Military Rules of Evidence, App. 22, at A22–37).

■ We review a military judge's decision to deny a motion to suppress evidence—like other decisions to admit or exclude evidence—for an abuse of discretion. *United States v. Freeman*, 65 M.J. 451, 452 (C.A.A.F.2008)(citing *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F.1995)). An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law. *Id.* (citing *United States v. Rader*, 65 M.J. 30, 32 (C.A.A.F.2007)). " 'Further, the abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range.' " *Id.* (quoting *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F.2004)). For the two types of evidence to which the appellant did not object, we review under a plain error standard. *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F.2008).

MIL. R. EVID. 414(a) "provides that '[i]n a court-martial in which the accused is charged with an offense of child molestation, evidence of the accused's commission of one or more offenses of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant.' " *United States v. Schroder*, 65 M.J. 49, 52 (C.A.A.F. 2007). MIL. R. EVID. 414 establishes a presumption in favor of admissibility in order to show an accused's predisposition to commit the designated crimes under the rule. *United States v. Tanner*, 63 M.J. 445, 448 (C.A.A.F.2006)(citing *United States v. Wright*, 53 M.J. 476, 482–83 (C.A.A.F.2000)). Evidence admitted under MIL. R. EVID. 414 is commonly referred to as predisposition or "propensity" evidence, in contrast to evidence offered under MIL. R. EVID. 404(b) for "other purposes" such as proof of motive or intent. *Id.; see also United States v. James*, 63 M.J. 217, 220 (C.A.A.F.2006). Unlike MIL. R. EVID. 404(b) evidence, propensity evidence under MIL. R. EVID. 414 may be admitted to prove the alleged charge against an accused. *James*, 63 M.J. at 218.

■ Before admitting propensity evidence under MIL. R. EVID. 414, the military judge must make three threshold findings: (1) that the accused is charged with an act of child molestation as defined by MIL. R. EVID. 414; (2) that the proffered evidence is evidence of his commission of another offense of child molestation; and (3) that the evidence is relevant under MIL. R. EVID. 401 and 402. *Schroder*, 65 M.J. at 52 (citing *Wright*, 53 M.J. at 482, and *United States v. Dewrell*, 55 M.J. 131, 138 n. 4 (C.A.A.F.2001)(parenthetical comments omitted)); *see also United States v. Bare*, 65 M.J. 35, 36 (C.A.A.F.2007). Relevance under MIL. R. EVID. 401 and 402 is enforced through MIL. R. EVID. 104(b). *Wright*, 53 M.J. at 483 (citing *Huddleston v. United States*, 485 U.S. 681, 689–90, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)). The military judge must also conduct a balancing test pursuant to MIL. R. EVID. 403, under which relevant evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members." *Tanner*, 63 M.J. at 449 (citing *Berry*, 61 M.J. at 95).

■ The propensity evidence at issue in this case includes 13 file names, one frame of a video, and testimony that the computer contained remnants of 4,000 "Lolita" searches. To aid in our analysis, we consider the propensity evidence as belonging to one of five groups: (1) file names that are clearly indicative of homosexual (male-on-male) child pornography; (2) file names that are indicative of child pornography, but are

not gender-specific; (3) a file name that is not indicative of any child pornography; (4) the expert testimony regarding internet searches using the term "Lolita" and (5) the expert testimony regarding a single movie frame image of purported pornography.[5]

## 1. Threshold Findings

First, the military judge found that the appellant was charged with an act of child molestation: the two specifications under Article 125, UCMJ, of forcible sodomy upon a fourteen year-old child, JP. AE XXIX at 3; Charge Sheet. We hold that the military judge was correct that JP, as a person below the age of sixteen, meets the definition of "child" under MIL. R. EVID. 414(d). We also agree that forcible sodomy includes "contact between the genitals or anus of the accused and any part of the body of a child," and is therefore an "offense of child molestation" under MIL. R. EVID. 414(d)(3). Although the military judge explicitly applied this initial threshold factor to only three of the categories of evidence, we conclude this error was harmless. We hold that this threshold factor was satisfied for all five categories of computer evidence admitted against the appellant. MIL. R. EVID. 414(a); *Wright*, 53 M.J. at 482.

■ As to the second threshold factor, the military judge concluded that the possession or attempted possession of child pornography, a violation of 18 U.S.C. § 2252A, constitutes "an offense of child molestation" as it involves "deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain of a child" under MIL. R. EVID. 414(d)(5). AE XXIX at 3–4. Like the military judge, we are persuaded that this ruling is correct and is in concert with at least one federal court. *Id.* (citing *United States v. Seymour*, 468 F.3d 378, 385 (6th Cir.2006)("Child molestation includes both conduct proscribed in Chapter 109A of Title 18, if committed against a child, and offenses involving child pornography.")). Further, we hold that possession, or attempted possession, of child pornography also qualifies as an "offense of child molestation" under MIL. R. EVID. 414(d)(2) and (g)(5) as "sexually explicit conduct with children … proscribed by … Federal law" because it involves the "lascivious exhibition of the genitals or pubic area of any person."[6] Upon review of the record, we are satisfied that the evidence of the file names indicative of child pornography (file numbers (1) through (11) and (13)),[7] and the internet searches using the term "Lolita," establish that the appellant possessed or attempted to possess child pornography in violation of 18 U.S.C. § 2252A. This evidence, therefore, meets the criteria of a qualifying offense of child molestation under MIL. R. EVID. 414(d).

■ However, we find that the military judge's ruling at this juncture allowed into evidence more than was permissible under MIL. R. EVID. 414, given the mandate "that the proffered evidence is evidence of [the appellant's] commission of another offense of child molestation." *Schroder*, 65 M.J. at 52 (citing *Wright*, 53 M.J. at 482). The name for file number (12),[8] lacks any indication that the graphic file associated with it depicted any sexually explicit conduct with children, or the lascivious exhibition of the genitals or pubic area of any person. In the absence of any indication that the file contained child pornography, the possession or attempted possession of this file does not constitute a qualifying offense of child molestation under MIL. R. EVID. 414(d). Consequently, we hold that the military judge abused his discretion in allowing the admis-

---

5. While the evidence in categories (4) and (5) was not subject to the appellant's motion *in limine* or later objection by trial defense counsel, we still review whether its admission constitutes plain error. *United States v. Powell*, 49 M.J. 460, 463–65 (C.A.A.F.1998).

6. This holding is consistent with FEDERAL RULE OF EVIDENCE 414(d)(2) which defines an "offense of child molestation" as including possession or attempted possession of child pornography under

chapter 110 of title 18, United States Code. 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2); *see also United States v. Bentley*, 475 F.Supp.2d 852, 856–57 (N.D.Iowa 2007), *aff'd*, 561 F.3d 803 (8th Cir.2009).

7. *See* footnote 4.

8. *See* footnote 4.

sion of file number (12) [9] as evidence against the appellant.

For similar reasons, we find that the testimony regarding the movie frame image of pornography, found under the file name "boy.kiddy.pedo.DX17[1].mpeg", also failed to meet the second threshold factor—relevance. As to this image, the DCFL computer expert testified:

Q. What did that frame indicate to you?

A. It showed—and it was grainy, it was not a very clear frame—two individuals with their backs to the camera. At least one—the one in front of the other one appeared naked, and it appears that there was about to be, or was a sexual situation occurring.

Q. Could you tell anything about the size of stature of the two individuals?

A. The one in front was smaller that [sic] the other one—the one behind.

Q. Were they male or female?

A. It appeared that they were both male.

Record at 733–34. On cross-examination, the DCFL computer expert conceded that the image could have depicted a man and a woman. *Id.* at 750. Given the state of the testimony regarding this image, we cannot find that it represented an image of child pornography such that the second threshold factor was satisfied, because the expert was unable to testify it depicted children.[10] We therefore conclude that the expert's testimony regarding this single movie frame image does not reflect a qualifying offense and should not have been admitted into evidence.

To analyze the third threshold factor—whether the evidence is relevant under MIL. R. EVID. 401 and 402—a military judge is required to determine the logical relevance of the evidence. *James*, 63 M.J. at 221. Relevant evidence is that which has a tendency to make a fact more or less probable, and has two components: (1) probative value, the relationship between the evidence and the proposition it is offered to prove; and (2)

materiality, the relationship between the proposition the evidence is offered to prove and the facts at issue in the case. *Id.* (citations omitted). In this case, the military judge made the following assessment of the 13 contested file names:

The fact at issue is whether the accused engaged in oral and/or anal sodomy with the alleged victim. The alleged victim in this case is a teenage boy. The proffered [file names] evidence tends to show that the accused has a prurient interest in sexual acts involving teenage boys. Evidence of the accused's prurient interest regarding sexual acts involving teenage boys tends to show his propensity to engage in such acts. "A defendant with a propensity to commit acts similar to the charged crime is more likely to have committed the charged crime than another. Evidence of such a propensity is therefore relevant." *United States v. Guardia*, 135 F.3d 1326, 1328 (10th Cir.1998)(Citing *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)). Additionally, Mil. R.Evid 414 specifically permits that propensity evidence may be admitted to prove the alleged charge against an accused. *United States v. James*, 63 M.J. 217, 218 (C.A.A.F.2006).

AE XXIX at 4.

In addition to the graphic sexual language used in the file names themselves, the military judge's finding that their existence on the appellant's computer is probative of his "prurient interest regarding sexual acts involving teenage boys" is supported by the DCFL computer expert's testimony in two respects. First, the "metadata" of each file name—information imbedded by whomever originally posted the files to Kazaa—labels the files as graphic images of child pornography. *Id.* at 326–27. Second, the appellant would have had to individually select the file name from a website on the internet before the Kazaa program would download it to his

---

9. *See* footnote 4.

10. We note that the only evidence regarding this movie frame image came from the expert witness' testimony as to what he saw when he viewed the image. There is a clear distinction

between the file name for this image, "boy.kiddy.pedo.DX17[1].mpeg," and the expert's testimony as to what he actually saw, and therefore we still consider whether the file name was properly admitted.

computer. Record at 317–18. Given these facts, the file names are probative of the appellant's possession or attempted possession of child pornography, and are material to the issue of his "prurient interest regarding sexual acts involving teenage boys." The file names referencing child pornography—both homosexual and heterosexual—are logically relevant to determine whether the appellant committed sex acts with JP. Specifically, we find that possession of file names representative of child pornography by the appellant is probative of his interest in sex involving children, and it is material to the proposition that he had anal and oral sodomy with JP. *James*, 63 M.J. at 221.

The military judge made no such relevance finding as to the evidence of the internet searches using the term "Lolita". However, following the same logic employed above, we find the evidence of the internet searches from the appellant's computer using the term "Lolita" is probative of "an attempt ... to engage in conduct" involving possession of child pornography by the appellant, as required by MIL. R. EVID. 414(d)(6). The expert witness from DCFL testified that the search term "Lolita" is frequently associated with child pornography. Record at 732. Given that these internet searches were conducted on the appellant's laptop computer, using a folder named "Rob Yammine" that is associated with the Kazaa peer-to-peer file sharing program, we are confident that the third threshold factor requiring that the propensity evidence be relevant was satisfied for this evidence as well.

We conclude that the three threshold findings required by MIL. R. EVID. 414 were satisfied for the file names indicative of child pornography and the "Lolita" internet searches, but not as to file name (12), or the movie frame image of purported pornography. *Schroder*, 65 M.J. at 52.

In the alternative, even under the narrower purposes permitted by MIL. R. EVID. 404(b), we conclude that this evidence would be admissible as probative of the appellant's motive and intent in relation to the lesser included offense of indecent liberties with a child. *Bare*, 65 M.J. at 37–38; *see also Unit-ed States v. Whitner*, 51 M.J. 457, 460 (C.A.A.F.1999); *Mann*, 26 M.J. at 4.

### 2. Military Judge's Role as Gatekeeper

Having determined that the "file name evidence," (1) through (11) and (13), satisfies the three threshold factors under *Wright*, we still must determine whether the propensity evidence sought to be introduced by the Government against the appellant satisfied the burden of proof by a preponderance of the evidence, as required under *Huddleston*, 485 U.S. at 681, 108 S.Ct. 1496, as well as the conditional relevance requirement of MIL. R. EVID. 104(b). Consistent with his duty to act as a gatekeeper of such evidence, the military judge must decide whether the court-martial members can reasonably conclude that the other acts occurred and that the defendant was the actor, by a preponderance of the evidence. *United States v. Washington*, 63 M.J. 418, 422 n. 2 (C.A.A.F.2006) (citing *Huddleston*, 485 U.S. at 689, 108 S.Ct. 1496); *see also Schroder*, 65 M.J. at 54 n. 2; and *Wright*, 53 M.J. at 483 (citations omitted).

Using the same facts we considered to assess the relevance of the evidence under the third threshold factor *supra*, we conclude that the members could reasonably find by a preponderance of the evidence that the appellant possessed, or attempted to possess, child pornography on his personal computer. Our conclusion is supported by the graphic nature of the file names themselves, the DCFL computer expert's testimony regarding the requirement that the user of the Kazaa file-sharing program would have to affirmatively select the files before they could be downloaded, and the location of the file names on the appellant's computer. We conclude that the "file name evidence," with the exception we have noted, meets both the *Huddleston* standard and MIL. R. EVID. 104(b), and proves by a preponderance of the evidence that the appellant possessed, or attempted to possess, child pornography.

### 3. Legal Relevance Under MIL. R. EVID. 403

▮ After ruling that the three threshold findings necessary to satisfy MIL. R. EVID.

414 had been met, the military judge analyzed whether the 13 file names were legally relevant under MIL. R. EVID. 403, using factors stated in *Wright:* the strength of the proof of the prior act; the probative weight of the evidence; the potential to present less prejudicial evidence; the possible distraction of the fact-finder; the time needed to prove the prior conduct; the temporal proximity of the prior event; the frequency of the acts; the presence of any intervening circumstances; and the relationship between the parties. *Wright,* 53 M.J. at 482; *see also Schroder,* 65 M.J. at 52; *Bare,* 65 M.J. at 36; and *Berry,* 61 M.J. at 95.

The military judge found that all of the 13 file names were strong evidence of a prior offense by the appellant of possessing or attempting to possess child pornography. AE XXIX at 4. Recognizing that the evidence was something less than a prior conviction, he still viewed the reliability of the evidence as "substantially above that of mere gossip." *Id.* The military judge also considered the "highly suggestive" nature of the file names themselves, "coupled with the fact that the downloading of the file required an affirmative act by the computer user indicate that there was at least an attempt, if not actual possession of child pornography." *Id.*

Other than file name (12),[11] we find that the military judge's finding is again supported by the DCFL computer expert's testimony regarding the requirement that the user of the Kazaa file-sharing program would have to affirmatively select the files before they could be downloaded, and the location of the file names on the appellant's computer. Given this technical requirement and in conjunction with the graphic nature of the file names themselves, we view the presence of these file names on the appellant's computer as strong proof that he possessed or attempted to possess child pornography.[12] The military judge's findings and conclusion that this

factor favors admissibility were not an abuse of discretion.

As to the probative weight of the evidence, the military judge found that "[t]he nature of the filenames *all* reflect subject matter involving sexual acts of teenage or preteen boys which relate directly to the alleged acts in this case." *Id.* at 5 (emphasis added). As we have already determined, the military judge was incorrect in stating that *all* of the file names reflected sexual activity of teenage or preteen boys, because one of the file names, number (12), does not suggest children are depicted at all; and another file name, number (10), indicates a female child is shown. However, the military judge was correct that 11 of the 13 file names—numbers (1) through (9), (11), and (13)—describe sexual activity involving boys or teenagers. As to these file names, we agree with the military judge that they are probative to the appellant's offenses because of their striking similarity to his alleged conduct with JP in the library bathroom and his barracks room. The military judge's conclusion that this factor favors admissibility was not an abuse of discretion as to file name numbers (1) through (9), (11), and (13).

As to file name number (10), which indicates heterosexual child pornography, we hold that the military judge's finding was erroneous. The probative weight of this evidence is light given the nature of the offenses alleged against the appellant and that file name number (10) makes no reference to "boys" at all.

Next, the military judge determined that the distraction of the factfinder and time needed for the Government to present proof of the appellant's prior conduct also favored admissibility, because "[t]he chain of custody and the results of the forensic analysis do not seem to [sic] overly complex and the government should be able to present this case without undue delay of the proceedings." *Id.* We agree. The record reflects that the Gov-

---

11. *See* footnote 4.

12. This includes the file name number (1), "boy.kiddy.pedo.DX17[1].mpeg," even though we have determined, *supra,* that the DCFL expert's testimony regarding the movie frame *image* is not admissible. The graphic nature of the file

name, coupled with the fact that the appellant would have to click on the file name before it would download to his computer, demonstrates his intent to possess or attempt to possess child pornography, despite the fact that the image he ultimately received was of poor quality.

ernment's presentation regarding the computer evidence involved one of their four witnesses, and required less than two hours of testimony. The technical aspects of proving the appellant downloaded these files and their associated images was not particularly complex, and was not countered by a defense expert. The military judge's conclusion that this factor favors admissibility was not an abuse of discretion.

Regarding the temporal proximity of the prior conduct to the alleged offenses, the military judge found that the downloading of the file names occurred one year and five months before the appellant's encounter with JP. The military judge found that this fact favored admissibility, noting that the Eighth Circuit Court of Appeals reversed a trial court for excluding evidence of prior conduct that occurred eight years before the alleged offense. *Id.* (citing *United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir.1997)). Although we recognize that the prior conduct of the defendant in *LeCompte* was appreciably different than the prior conduct of the appellant, we do not consider a period of one year and five months between the appellant's prior conduct and his charged offense to be so long in duration as to be significant. *Wright*, 53 M.J. at 482 (citation omitted). The military judge's conclusion that this factor favors admissibility was not an abuse of discretion.

The military judge found that the factor related to the frequency of the acts of appellant's prior conduct favored exclusion. AE XXIX at 5. The appellant's download of the file names to his computer occurred between 31 October and 1 November 2004, and the military judge reasoned that "[t]here is no way to determine the number of times these images were viewed...." *Id.* We agree. This conclusion was not an abuse of discretion.

The military judge considered the factor related to the presence or lack of intervening circumstances to be neutral. The military judge found that the appellant's testimony that he bought the computer from another Marine three months after the file names were downloaded was suspect because of his obvious bias. However, this testimony was corroborated to some degree by another Marine who testified he assisted the appellant in connecting the computer to the internet at the same time. *Id.* In view of the fact that the appellant was the only registered user of his computer, the military judge's conclusion that this factor does not favor either party was not an abuse of discretion.

Finally, the military judge found that the factor regarding relationship between the parties also favored admissibility. He reasoned that the Government computer expert testified, but neither of the appellant's two court-appointed computer experts testified in rebuttal. *Id.* The military judge's finding is illogical. The "parties" to the qualifying offense are the appellant and the victim of such offense, who tenders the testimony. In this case, there is no relation between the appellant and the purported victims of the qualifying offenses of child pornography. We, therefore, conclude that the military judge erred, but this factor, nevertheless, favors admissibility. *See United States v. Bailey*, 55 M.J. 38, 41 (C.A.A.F.2001).

Considering all of these factors together, and the military judge's lengthy on-record MIL. R. EVID. 403 balancing analysis, we hold that his admission of the file name numbers (1) through (9), (11) and (13) was not an abuse of discretion. *Schroder*, 65 M.J. at 53. We note that none of the computer evidence required the members to view graphic images of child pornography, but rather the less inflammatory verbal descriptions of the DCFL expert's testimony and written file names. In this format, we are confident that under MIL. R. EVID. 403, the probative value of the admissible file names evidence was not substantially outweighed by the danger of any unfair prejudice, as the likelihood of the members' distraction by the evidence was less acute than if they had been shown actual pictures.

However, in admitting file number (10), we hold that the military judge did abuse his discretion, and will therefore test its admission, along with the admission of file number (12), for harmless error.

#### 4. Plain Error Analysis

 When the defense fails to object to admission of specific evidence, the issue is waived, absent plain error. *United States v. Maynard,* 66 M.J. 242, 244 (C.A.A.F.2008) (citations omitted). The plain error standard is met when (1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights. *Id.* (quoting *United States v. Hardison,* 64 M.J. 279, 281 (C.A.A.F.2007)). The appellant has the burden of demonstrating that the three prongs of the test are met. *Id.*

While the appellant has not contested the admissibility of the evidence related to the "Lolita" internet searches, or the expert's testimony regarding the single movie frame image of purported pornography, we have considered the issue *sua sponte.* From our review of the record, we find that the admission of the "Lolita" internet searches was error, and that the error was plain, clear, and obvious for the simple fact that the military judge never conducted a MIL. R. EVID. 403 balancing analysis. Even though we have determined *supra* that this evidence meets the three threshold findings under *Wright* to satisfy MIL. R. EVID. 414 and is therefore probative, we are still left with the prejudicial effect of the sheer number of internet searches (over 4,000) conducted. The record is silent as to when or how the searches were made, what search engines were used, or what results the searches returned.

As for the expert's testimony regarding the single movie frame image of purported pornography, it lacks any probative value because there is no indication that the image depicted children at all. We hold that under MIL. R. EVID. 403, these two categories of computer evidence should have been excluded because their probative value was substantially outweighed by the danger of unfair prejudice. However, for the reasons stated in our harmless error analysis, *infra,* we conclude that because the admission of this evidence did not materially prejudice a substantial right of the appellant, it does not meet the standard for plain error.

#### 5. Harmless Error Analysis

 As we have noted, there were two items of evidence admitted by the military judge that we conclude amounted to an abuse of discretion: file name number (12), which failed the threshold findings under MIL. R. EVID. 414, and file number (10), which failed analysis under MIL. R. EVID. 403. We therefore review *de novo* whether the military judge's error in admitting this evidence "had a substantial influence on the members' verdict in the context of the entire case." *United States v. Harrow,* 65 M.J. 190, 200 (C.A.A.F.2007)(citing *Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) and *Berry,* 61 M.J. at 97). We consider four factors: (1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question. *Id.* (citing *Berry,* 61 M.J. at 98). "When a 'fact was already obvious from ... testimony at trial' and the evidence in question 'would not have provided any new ammunition,' an error is likely to be harmless." *Id.* (quoting *United States v. Cano,* 61 M.J. 74, 77–78 (C.A.A.F.2005)).

The Government presented a convincing case against the appellant. The evidence shows that the appellant used his authority as a Marine drill instructor to induce JP to participate in sexual relations with him in the library bathroom, and entice JP to return to his barracks to engage in further sexual activity there. The key evidence was provided by JP's in-court testimony, and his prior consistent statements recorded by a social worker who investigated his allegations. The Government's evidence was corroborated by the appellant's admissions to NCIS and in court: that in fact he did encounter JP in the library bathroom, did invite JP to his barracks room, and provided his personal telephone number to JP on a slip of paper. Further corroboration comes from the lubricating jelly found by NCIS in the appellant's nightstand drawer during their search of his barracks room, exactly as JP described it. Finally, JP's testimony is corroborated by the existence of the file name evidence we have found admissible, located on the appellant's personal computer, which graphically

describes sexual behavior remarkably consistent with JP's description of his activity with the appellant. JP, a 14–year–old boy, described the appellant performing fellatio on him, and the appellant anally sodomizing him in the appellant's barracks room.

The defense's case consisted of a concerted effort to question JP's credibility, both through cross-examination as to inconsistencies in his testimony, and the expert testimony of a forensic psychologist that questioned the suggestibility of JP's interview by the social worker. The defense called a senior drill instructor to describe the supervisory duties of a drill instructor, and a Marine staff sergeant who testified that the appellant assisted him in connecting his computer to the internet, in an effort to establish when the appellant purchased his personal computer. The appellant testified on his own behalf and denied JP's allegations. However, as we have noted, the appellant did corroborate parts of JP's testimony and prior statements. Further, the defense had no effective rebuttal to the results of the forensic analysis of the appellant's computer data, which graphically indicated his prurient interest in acts such as alleged against him. We find that the defense case was weak when compared to that of the Government.

In contrast, the materiality of the evidence we have found inadmissible is mixed. The file name number (12), as we have noted, gives no suggestion that it contained child pornography, is not admissible under MIL. R. EVID. 414, and thus is not material to any fact at issue. Record at 750. The file name number (10) suggests heterosexual child pornography, and thereby lacks materiality as well. AE XXIX at 5. However, the existence of the "Lolita" internet searches on the computer suggest the means by which appellant attempted to obtain child pornography, and is therefore material to his prurient interest in sexual activities involving children.

Regarding the quality of the evidence in question, we note that none of the computer evidence we have found inadmissible involved the presentation of visual evidence to the members. All of the file names and internet search evidence came in the form of testimony describing the files, and the movie frame image evidence.

In summary, we find the more generic adult pornography suggested by file number (12), the heterosexual child pornography suggested by file number (10), and the "Lolita" internet searches are all far less prejudicial than the more specific and graphic computer evidence we have found admissible, and provided little added information for the members to consider. Therefore, we hold that the Government has met its burden of demonstrating that " 'the error did not have a substantial influence on the findings.' " *Berry*, 61 M.J. at 97 (quoting *United States v. McCollum*, 58 M.J. 323, 342 (C.A.A.F.2003)); *see also United States v. Goodin*, 67 M.J. 158 (C.A.A.F.2009).

Our conclusion is buttressed by the verdict. For the incident in the library bathroom, the members found the appellant not guilty of forcible sodomy, but guilty of the lesser included offense of indecent acts with a child under Article 134, UCMJ. For the incident in the appellant's barracks room, the members found the appellant guilty of sodomy, but excepted out the language "by force and without consent." These findings indicate the members were not inflamed by the inadmissible evidence. Furthermore, the strength of the Government's case convinces us that this case was appreciably more than a "he said, he said" case, as the appellant contends. The quality of the prosecution evidence in this case was substantial: the victim clearly testified about his encounter with the appellant and the sexual activity that followed. His testimony was corroborated, in part, by evidence found during a search of the appellant's barracks room, and the appellant's own testimony. Most germane, however, were the very specific and graphic file names that were properly admitted as substantial propensity evidence.

For these reasons, taken in the context of the entire record, we see no indication that the military judge's errors had a substantial influence on the members' verdict as to findings because the inadmissible evidence did not provide "any new ammunition" against the appellant. *Harrow*, 65 M.J. at 200 (citations omitted).

## B. Post–Trial Delay

■ The appellant's fourth assignment of error alleges unreasonable post-trial delay because it took 214 days after sentencing before the convening authority took action in this case. The trial concluded on 15 June 2007, the convening authority's action was completed on 15 January 2008, and the case was docketed with this court on 25 January 2008.

Assuming, without deciding, that the appellant was denied the due process right to speedy post-trial review and appeal, we proceed directly to the question of whether any error was harmless beyond a reasonable doubt. *United States v. Allison*, 63 M.J. 365, 370–71 (C.A.A.F.2006). The appellant raises no meritorious issues on appeal and alleges no specific prejudice as a result of post-trial delay. In that the appellant has failed to provide any substantiated evidence of prejudice, we conclude that the assumed error was harmless beyond a reasonable doubt. *United States v. Allende*, 66 M.J. 142, 145 (C.A.A.F.2008). The delay does not affect the findings and sentence that should be approved in this case. *Toohey v. United States*, 60 M.J. 100, 101–02 (C.A.A.F.2004); *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F.2002); *United States v. Brown*, 62 M.J. 602 (N.M.Ct.Crim.App.2005)(en banc).

## III. Conclusion

We have considered the appellant's remaining assignments of error and find they have no merit. *United States v. Reed*, 54 M.J. 37, 42–43 (C.A.A.F.2000)(citing *United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987)). The findings and the sentence, as approved by the convening authority, are affirmed.

Chief Judge O'TOOLE, Senior Judge GEISER, Senior Judge VINCENT, Judge KELLY, Judge PRICE, Judge MAKSYM, and Judge STOLASZ concur.

BOOKER, Judge (concurring in the result):

I concur that the record of trial presents a legally and factually sufficient basis for af-

firming the guilty findings and the approved sentence. I must, however, distance myself from the court's treatment of MILITARY RULE OF EVIDENCE 414, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.).

I am aware of the volumes of legislative history concerning the impact of child pornography, and for the purposes of this concurrence I do not dispute the Congressional finding that child pornography is a serious form of child abuse. For the purpose of this concurrence, I can even agree with much of what the majority says in reaching its conclusion. I part company with the majority, however, on whether receipt or possession of child pornography constitutes a "qualifying offense" under MIL. R. EVID. 414 and whether, in the case at bar, the military judge properly exercised his duty as a gatekeeper by allowing the members to consider file names to be equivalent to child pornography.

MIL. R. EVID. 414 permits the Government to introduce "evidence of the accused's commission of one or more offenses of child molestation." The rule defines an offense of child molestation to mean an offense punishable under the UCMJ, or a crime under Federal law or the law of a State, that involved (1) any sexual act or sexual contact or (2) any sexually explicit conduct with children proscribed by the UCMJ, federal law, or state law. MIL. R. EVID 414(d). "Sexually explicit conduct" for the purposes of the Rule means actual or simulated sexual intercourse; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals.[1] MIL. R. EVID. 414(g).

All the offenses included in the Military Rule involve being in the physical presence of a child. Notably, the Military Rule does not include "communicating indecent language to a child" or "transmitting obscene matter to a child" among the qualifying offenses. As noted in the Drafters' Analysis of the Military Rule and in the few cases interpreting the Military Rule, our rule is based on FEDERAL RULE OF EVIDENCE 414.[2] The

---

1. *See also* 18 U.S.C. § 2256 (definitions for purposes of child pornography statutes).

2. *See United States v. Wright*, 53 M.J. at 478, 480 n. 4 (C.A.A.F.2000). The opinion's author over-

Federal Rule notably also does not include these sorts of offenses (the "obscenity" chapter of title 18 is Chapter 71; the Federal Rule mentions only Chapters 109A and 110). I am inclined to conclude, therefore, that the Rule is intended to cover only those acts that have been committed upon or in the presence of the child by the accused.

The question then becomes whether possession or attempted possession of child pornography, which concededly involves violations of either federal or state law, constitutes "sexually explicit conduct" under the Rule. The definitions of "sexual act" and "sexual contact" in the Military Rule eliminate considering possession of child pornography on those bases. The real question, therefore, is whether possessing items that contain depictions of sexually explicit conduct (i.e., child pornography) is the same thing as actually engaging in sexually explicit conduct.[3]

The Federal Rule was created in the drafting of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322. *United States v. Wright*, 53 M.J. at 478, 480 (C.A.A.F.2000). Coincidentally, that same public law contained the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, codified at 42 U.S.C. § 14071. *See generally United States v. Seymour*, 468 F.3d 378, 384 (6th Cir.2006). The Wetterling Program requires that the Attorney General provide guidelines to the states on who must register as a sex offender. It provides for broad categories of "qualifying offenses," and among those offenses it lists *production* or *distribution* of child pornography, as described in section 2251, 2252, or 2252A of title 18. 42 U.S.C. § 14071(a)(3)(A)(viii). It does not include among its provisions a requirement to register for *possessing* or *receiving* child pornography, nor does it include transmitting obscene matter or communicating indecent language among its provisions; presumably, if receipt or possession of child pornography had been deemed as serious as the other "registration" offenses, Congress would have included them in the Wetterling regime and carried them forward into the Rules of Evidence.

The inclusion of production and distribution of child pornography makes sense in the context of the Wetterling Act, as the other "qualifying offenses" all involve activities that suggest that the defendant was in the physical presence of the child at some point during the commission of the offense.[4] Comparing the "registration" offenses to the categories listed under Federal Rule 414, one sees that the Rule is practically in lockstep with the statute.

A further problem that I have with including possessing or receiving child pornography among the qualifying offenses under either Federal or Military Rule 414 is that the

---

simplifies the analysis by noting that the rules are "virtually the same".

3. In support of the proposition that possession of child pornography can be a "qualifying offense," the majority cites to *United States v. Seymour*, 468 F.3d 378 (6th Cir.2006). I respectfully characterize this reliance as misplaced. *Seymour* was a case involving prior sexual assaults against adult victims to show a propensity to assault a child; the statement about child pornography was mere *obiter dicta* that had no bearing on the outcome of the case, as there was no evidence at the trial level involving child pornography. *Seymour*, 468 F.3d at 384–85.

4. Commissioning or producing a work of child pornography is acting as a principal in the rape of a child, the sodomy of a child, or other sexually explicit conduct with respect to a child. Art. 77, UCMJ, 10 U.S.C. § 877. Both production and distribution have aspects of building and maintaining a market for pornography, and they might logically be treated differently from receipt or possession (although concededly if there were no demand, there would be no supply). Granted, distribution is an "after the fact" part of the process, and indeed neither production nor distribution is treated more severely, by statute, than receipt; possession, however, is treated less severely. *Compare* 18 U.S.C. § 2252A(b) *with* United States Sentencing Commission, Guidelines Manual, §§ 2G2.1, 2G2.2 and Ch. 5 Pt. A (Nov.2008). I recognize that the Sentencing Guidelines do not apply, either substantively or procedurally, to courts-martial, but they are instructive for assessing the "value" of a particular offense. Production of child pornography, for example, commands a range of imprisonment of 121–151 months for the lowest level offender, whereas possession with the intent to distribute commands 41–51 months and mere possession 27–33.

definition of "child" in section 2256 of title 18 is different from the definition in both Federal Rule 414 and Military Rule 414. Under the statutory provision, a "child" is under 18. Under the Federal Rule, a "child" is under 14. Under the Military Rule (presumably to maintain consistency with the punitive articles), a "child" is under 16. Thus in military practice, only possession or receipt of images of sexually explicit conduct involving at least one actual person under the age of 16 would be a qualifying offense, even though possession or receipt of those images would still constitute a criminal offense if at least one actual person depicted were under the age of 18.

The problem is placed in sharp relief in the case at bar, where all that the Military Judge sent to the members was a list of file names suggestive of pornographic content. The members had no images to view to determine whether, in fact, the files involved the use of an actual minor under the age of 16 engaged in sexually explicit conduct. The Military Judge thus failed to make a critical "threshold finding," namely, that the proffered evidence is evidence of commission of an offense of child molestation, as there is no way of knowing whether a "child" (for purposes of the Rule) was involved.[5] *See United States v. Schroder,* 65 M.J. 49, 52 (C.A.A.F.2007)(citing *Wright,* 53 M.J. at 482). The majority assumes that the "graphic file associated" with these names contained child pornography, but without the files it is impossible to tell whether the files contained graphic images of actual persons under the age of 16 engaged in sexually explicit conduct. *Cf. United States v. Leedy,* 65 M.J. 208, 213–15 (C.A.A.F.2007)(graphic titles might lead to a conclusion of probable cause to search, a standard lower than preponderance of the evidence; opinion acknowledges a departure from usual course of requiring pictures to establish probable cause).

The majority also places too much weight, in my opinion, on two other facets of the trial. First, the majority credits the military judge's determination that "[e]vidence of the accused's prurient interest regarding sexual acts involving teenage boys tends to show his propensity to engage in such acts". Appellate Exhibit XXIX at 4. Whatever the appellant's prurient interests may or may not be, the Rule under which these file names was admitted requires commission of an offense of child molestation, not morbid curiosity about sexually explicit activity involving children. Additionally, the majority invokes the "metadata" discussed by the expert, Record at 326–27, as revealing the actual content of the files and, therefore, the appellant's intent in obtaining the files. As the majority notes, however, metadata are not apparent to the casual user, so unless there is some indication that the appellant is a sophisticated computer programmer (and there are indications to the contrary in the record), it is difficult to attribute to the appellant the knowledge that the original poster labeled the files as containing child pornography.

Although I see the military judge's failure as one under Rule 414, I see it also as a failure under Rule 403, which courts have consistently held applies in cases involving application of Rule 414. *E.g. Wright,* 53 M.J. at 482–83 (Rule 403 provides important constitutional safeguard). The testimony of record is unclear when the appellant last opened any of the files associated with the file names found on his computer; it may have been as recently as a month before the offenses, it may have been as remotely as a year before the offenses. Furthermore, the names of the files presented to the members describe acts that are largely unrelated to the offenses charged. I place special significance on the fact that none of the file names include references to homosexual sodomy between an adult male and a juvenile male. Finally, if Rule 414 can allow evidence of a propensity to offend to be admitted, logic dictates that the propensity be to commit similar offenses; it paints with too broad a brush to declare that if one commits one discrete offense of child molestation then one will commit all types of child molestation. *Cf. United States v. James,* 63 M.J. 217, 219 (C.A.A.F.2006)(characterizing rule as one of propensity "to commit similar acts").

---

**5.** The military judge also failed to distinguish between an actual child and a virtual child; *see* generally *United States v. O'Connor,* 58 M.J. 450, 453 (C.A.A.F.2003).

I return to my initial point of concurrence in the result of this case. The members had evidence of sexual contact with JP, and they also had evidence that the appellant had admitted to larceny of housing allowances. They apparently resolved issues of credibility in favor of JP and adversely to the appellant. I am satisfied of both the legal and factual sufficiency of the evidence in this case, and I am satisfied that the findings and sentence are correct in law and fact. While I believe that the military judge erred in admitting the computer evidence, I find that error to be harmless. Accordingly, I concur in the result.